Odessa **CREDLE–BROWN**, Plaintiff,

v.

State of **CONNECTICUT**, Department of Children and Families, Darlene Dunbar, Renee Hoff, Marc Hambrecht, Christine Kaatz, Heather Panciera, Wanda Estrella and Lynn Paton, Defendants.

No. 3:04–cv–1167 (WWE).

United States District Court, D. Connecticut.

Aug. 20, 2007.

294

Alexander Lumelsky, Lumelsky & Mogilevich, LLP, Farmington, CT, for Plaintiff.

Tammy D. Geathers, Attorney General's Office, Hartford, CT, for Defendants.

## RULING ON DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

EGINTON, Senior District Judge.

This action arises from plaintiff Odessa Credle–Brown's claims that defendants State of Connecticut, Department of Children and Families ("DCF"), Darlene Dunbar, Renee Hoff, Marc Hambrecht, Christine Kaatz, Heather Panciera, Wanda Estrilla and Lynn Paton (collectively, "employee defendants")[1] violated her civil rights pursuant to Title I and Title II of the American with Disabilities Act of 1990, 42 U.S.C. § § 12101, *et seq.* ("ADA"), 42 U.S.C. § 1983, and state common law in that she was discriminated against because of a disability; to wit: post partum depression with psychosis and anxiety disorder. She claims that she was terminated from her job as a result of this discrimination.

---

1. Plaintiff does not specify in which capacities she is suing employee defendants. However, in both parties' papers, they address defendants in both their official and individual capacities. The Court will do so as well.

The complaint is brought in four counts. Count one claims a violation of Title I of the ADA against employee defendants. Count two is brought pursuant to Title II against DCF and employee defendants. Count three alleges violations of plaintiff's rights under § 1983 as to employee defendants and count four asserts that she suffered from employee defendants' intentional infliction of emotional distress. Plaintiff seeks reinstatement, back pay and lost benefits, compensatory and punitive damages, attorneys' fees and costs.

## BACKGROUND

Plaintiff was employed by DCF from December 1994 until February 2002. She was originally hired as a clerk typist and was promoted in June 1995 to the position of office assistant. In October 2000, plaintiff was diagnosed with post partum depression with psychosis and anxiety disorder and her physician predicted that this condition would persist for twelve to eighteen months. On July 11, 2001, plaintiff's physician submitted a medical certificate to DCF requesting that plaintiff be provided recovery time for her medical condition and that she work on a reduced schedule.

In July 2001, plaintiff began a 90–day light duty reduced workload assignment that was to terminate on October 14, 2001. The plaintiff was to work for eight hours a day on Mondays, Wednesdays and Fridays. In September 2001, plaintiff reported to employee defendants that her workload was too heavy. According to plaintiff's allegations, she repeatedly complained to defendants about her workload and these complaints were ignored.

In early October 2001, defendants informed plaintiff that her 90–day light duty assignment would expire on October 14, 2001 and that she would be required to return to work full time thereafter. She was also told that defendants would endeavor to find another suitable position or alternative duty if she was unable to return to full and/or regular duty on that date. If such search was unsuccessful, DCF reserved the right to process plaintiff's non-disciplinary separation from state service.

Subsequently, DCF received notice from plaintiff's physician informing it that plaintiff had been hospitalized from October 11, 2001 through October 30, 2001 and that the earliest she could expect to return to work was July 2002 or as late as January 2004.

On January 25, 2002, DCF informed plaintiff that an alternative position could not be found and that she was being separated from state service as a result of her inability to return to work following the expiration of her authorized medical leave of absence. On February 7, 2002, plaintiff's non-disciplinary separation from state service became effective.

Plaintiff claims that the Connecticut Commission on Human Rights and Opportunities retained this matter for a full investigation, but did not reach any conclusive determinations before plaintiff requested a release of jurisdiction in order to proceed to court.

Plaintiff filed her original complaint on July 15, 2004 and filed her first amended complaint on August 2, 2005. Defendants moved to dismiss this complaint on September 1, 2005 [Doc. # 26] and plaintiff moved to amend her complaint on November 8, 2005 [Doc. # 33]. The Court granted this motion and plaintiff filed the second amended complaint on January 30, 2006 [Doc. # 38]. On that same date, the Court found defendants' motion to dismiss moot. On September 18, 2006, defendants filed their answer and affirmative defenses [Doc. # 40] and, on September 26, 2006, defendants moved for judgment on the pleadings [Doc. # 44].

## DISCUSSION

Pursuant to Federal Rule of Civil Procedure 12(c), any party may move for judgment on the pleadings "after the pleadings are closed but within such time as not to delay the trial." Fed.R.Civ.P. 12(c). A judgment on the pleadings is appropriate when all substantive facts are undisputed and a judgment on the merits is feasible simply by assessing the contents of the pleadings. *Hines v. F.J.C. Security Co.*, 1998 WL 60967, *2 (S.D.N.Y.). As with a Fed.R.Civ.P. 12(b)(6) motion to dismiss, all facts as set forth by plaintiff shall be construed as true and all reasonable inferences will be drawn in plaintiff's favor. *Id.* Dismissal is proper under both a Rule 12(b)(6) motion and a Rule 12(c) motion only where it appears beyond all doubt that plaintiff can prove no set of facts that would entitle her to relief. *Abbott v. Harris Publications, Inc.*, 1998 WL 849412, *3 (S.D.N.Y.). A granting of judgment on the pleadings differs from a Rule 12(b) motion to dismiss, however, in that a court is unwilling to grant a Rule 12(c) motion unless it is evident that the merits of the controversy can be fully and fairly decided at this stage. To grant a Rule 12(b) motion to dismiss, in comparison, means that plaintiff has failed to satisfy one of the procedural prerequisites for her claim for relief. *Shen v. A & P Food Stores*, 1995 WL 728416, *5 n. 1 (E.D.N.Y.).

### I. Personal Jurisdiction

Defendants claim that plaintiff's case against employee defendants is barred because plaintiff failed to serve process on them in their individual capacities and, as a result, the Court lacks personal jurisdiction over these defendants. Plaintiff argues that defendants waived their defense of the lack of personal jurisdiction. The Court agrees with plaintiff.

Federal Rule of Civil Procedure 4(e) provides that an individual may be served pursuant to the law of the state for service upon a defendant or by delivering the summons and complaint "to the individual personally or at the individual's dwelling house or usual place of abode." Fed. R.Civ.P. 4(e). Connecticut General Statutes § 52–57(a) reflects the federal rule.[2] *See Bogle–Assegai v. State of Connecticut*, 470 F.3d 498, 507–08 (2d Cir.2006).

In the instant case, plaintiff attempted to effect service upon the individual employee defendants by leaving the summons with Associate Attorney General Gregory T. D'Auria. Doing so was proper as to defendants in their official capacities, but insufficient as to their individual capacities. *See* Conn. Gen Stat. § 52–64 (proper service of state officer effectuated by "leaving a true and attested copy of the process, including the declaration or complaint, with the Attorney General at the Attorney General's office in Hartford....."); *Burgos v. Department of Children and Families*, 83 F.Supp.2d 313, 316 (D.Conn.2000) (holding that service upon defendant through the Attorney General or through DCF was insufficient to confer personal jurisdiction over her in her individual capacity).

However, Federal Rule of Civil Procedure 12(h)(1) provides in relevant part:

A defense or lack of jurisdiction over the person, improper venue, insufficiency of process, or insufficiency of service of process is waived ... (B) if it is neither made by motion under this rule nor included in a responsive pleading or an amendment thereof permitted by Rule 15(a) to be made as a matter of course.

---

**2.** Conn. Gen.Stat. § 52–57(a) provides in relevant part: "Manner of service upon individuals ... (a) Except as otherwise provided, process in any civil action shall be served by leaving a true and attested copy of it, including the declaration or complaint, with the defendant, or at his usual place of abode, in this state."

Service was executed in November 2004 and counsel for defendants filed her appearance for employee defendants in their official capacities only on November 18, 2004 and filed her appearance for them in their individual capacities on December 22, 2004. On September 1, 2005, defendants filed a motion to dismiss in which they did not raise the personal jurisdiction defense.

Furthermore, in the parties' Rule 26(f) Planning Report (approved on January 19, 2006), defendants explicitly stated that they did not contest personal jurisdiction.

The first time defendants raised the defense of lack of personal jurisdiction was in their answer to plaintiff's second amended complaint. The amended complaint was filed on January 30, 2006. Defendants' answer was not filed until September 18, 2006.[3]

■ The lack of personal jurisdiction is deemed waived if not raised in either defendants' answer to the complaint or in a motion to dismiss. *Luv N Care, Ltd. v. Babelito, S.A.*, 306 F.Supp.2d 468, 472 (2d Cir.2004). A party who fails to object to personal jurisdiction in the first of either his answer or motion to dismiss has waived his objection. *See* Rule 12(g) and (h); *Palmer v. Braun*, 376 F.3d 1254, 1259 (11th Cir.2004) ("It is well settled that lack of personal jurisdiction is a waivable defect, and that a defendant waives any objection to the district court's jurisdiction over his person by not objecting to it in a responsive pleading or a Fed.R.Civ.P. 12 motion.").

■ This waiver is not obviated by virtue of an answer to an amended complaint. While an amended complaint generally supercedes the original, not all defenses are revived. If the defense of personal jurisdiction is not raised in defendants' response to the original complaint, it is considered waived and may not be renewed merely because a plaintiff has amended the complaint. *Gilmore v. Shearson/American Express, Inc.*, 811 F.2d 108, 112 (2d Cir.1987), *overruled on other grounds, McDonnell Douglas Finance Corp. v. Pennsylvania Power & Light Co.*, 849 F.2d 761 (2d Cir.1988). *See also Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir.1994) (distinguishing between the right to assert the defense of fraud and the prohibition of asserting the defense of personal jurisdiction in response to an amended complaint).

Because defendants did not raise this defense in their motion to dismiss, their claim that the Court lacks personal jurisdiction over defendant employees in their individual capacities is waived. Their motion for judgment on the pleadings will be denied on this ground.

## II. Subject Matter Jurisdiction

Defendants claim that plaintiff's complaint should be dismissed because her claims are barred by the Eleventh Amendment of the United States Constitution and state sovereign immunity. Plaintiff argues that her claims are not barred because they fall within delineated exceptions to such immunity.

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." This provision has been extended to suits against a state brought by its own citizens. *Board of Trustees of Univ. of Alabama v. Gar-*

---

**3.** Because of defendants' extreme delay in filing their response to plaintiff's amended complaint, they are in contravention of Fed.

R.Civ.P. 15(a). However, the Court will pursue its analysis of personal jurisdiction under other jurisprudential grounds as well.

*rett*, 531 U.S. 356, 363, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001).

■ Eleventh Amendment immunity bars federal courts from entertaining any suit for damages brought by a private citizen against a state without the state's consent. *Id.* "The ultimate guarantee of the Eleventh Amendment is that nonconsenting states may not be sued by private individuals in federal court." *Id.*

■ However, Congress may abrogate Eleventh Amendment immunity when it intends to do so and acts according to a valid grant of constitutional authority pursuant to Section 5 of the Fourteenth Amendment. *Kimel v. Florida Board of Regents*, 528 U.S. 62, 73, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000).

### 1. ADA

■ In the present action, plaintiff seeks both monetary and prospective injunctive relief pursuant to the alleged violations of her rights under Titles I and II of the ADA. Defendants counter that such relief is barred by sovereign immunity. The Court will dismiss counts one and two of plaintiff's complaint inasmuch as they allege causes of action under Titles I and II of the ADA against employee defendants in their individual capacities. There is no individual liability under Title I or Title II of the ADA. *Fox v. State University of New York*, 497 F.Supp.2d 446, 449–50 (E.D.N.Y.2007)

### a. Title I

■ Congress does not have the authority pursuant to § 5 to abrogate Eleventh Amendment immunity for money damages under Title I. *Garrett*, 531 U.S. at 360, 121 S.Ct. 955. To the extent that plaintiff

seeks monetary damages from the individual employee defendants in their official capacities, the Eleventh Amendment sovereign immunity applies. *Saidin v. New York City Department of Education*, 498 F.Supp.2d 683, 689–90 (S.D.N.Y.2007). Thus, plaintiff's claims for monetary relief under Title I against employee defendants in their official capacities will be dismissed.

■■ As for plaintiff's claims for prospective relief under Title I, the Second Circuit adheres to the long settled doctrine that the Eleventh Amendment does not preclude suits against state officers in their official capacity for prospective injunctive relief to prevent a continuing violation of federal law. *Ex parte Young*, 209 U.S. 123, 155–56, 28 S.Ct. 441, 52 L.Ed. 714 (1908); *Henrietta D. v. Bloomberg*, 331 F.3d 261, 287 (2d Cir.2003). It has determined that claims for reinstatement to previous employment satisfies the *Ex parte Young* exception to the Eleventh Amendment's immunity bar. *State Employees Bargaining Agent Coalition v. Rowland*, 494 F.3d 71, 95–96 (2d Cir.2007) (affirming district court's denial of motion to dismiss on the grounds that reinstatement to former employment qualifies as injunctive relief that is not barred by Eleventh Amendment immunity because it would end the alleged violation of federal law). *See also Dotson v. Griesa*, 398 F.3d 156, 178 (2d Cir.2005) (a court order of reinstatement, whether of government benefits or employment, is not barred by Eleventh Amendment sovereign immunity).[4]

### b. Title II

■ As to plaintiff's claims for monetary damages under Title II, the Supreme

---

**4.** While reinstatement could be construed as an order requiring the use of state funds, it is a "purely prospective injunctive relief that orders the state official to return the former employee to the state's payroll." *Dotson*, 398

F.3d at 178. "The fact that such an order might subsequently require the expenditure of state funds to pay the reinstated employee's salary is ancillary to such a prospective injunction and, thus not barred." *Id.*

Court has recently held that monetary relief is available for Title II violations where that violation actually infringes upon plaintiff's rights under the Fourteenth Amendment. *United States v. Georgia*, 546 U.S. 151, 126 S.Ct. 877, 881, 163 L.Ed.2d 650 (2006).

Pursuant to *Georgia*, whether conduct independently violates the Fourteenth Amendment must be determined on a claim-by-claim basis, incorporating the following analysis: 1) which aspects of the state's alleged conduct violated the ADA; 2) to what extent the alleged misconduct also violated the Fourteenth Amendment; and 3) inasmuch as such misconduct violated the ADA but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid. *Id.* at 882. The Court must have the opportunity to conduct this analysis and will not dismiss plaintiff's claims for monetary damages under the ADA at this juncture. *See Mercer v. Strange*, 96 Conn.App. 123, 899 A.2d 683 (2006) (remanding case to trial court to conduct *Georgia* analysis regarding abrogation of sovereign immunity).

Like Title I, Title II authorizes prospective injunctive relief against the state. *Lighthall v. Vadlamudi*, 2006 WL 721568, *18 (N.D.N.Y.). Accordingly, the Court will not dismiss plaintiff's claim for same.

## 2. Section 1983

Plaintiff has alleged that defendants have deprived her of her rights pursuant to 42 U.S.C. § 1983. She asserts that defendants, by and through a pattern of discrimination, caused her specific damages including, *inter alia*, the loss of her job, income and benefits and the continuation of psychological and physical harm. Defendants argue that this is insufficient to state a claim under § 1983.

In order to establish a claim under 42 U.S.C. § 1983, plaintiff must demonstrate that the conduct complained of was committed by a person acting under the color of state law and that this conduct deprived plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981).

Plaintiff satisfies both prongs of the test for a § 1983 claim: 1) defendant employees were at all times acting under the aegis of DCF, a state agency, and 2) these defendants' actions allegedly caused the deprivation of plaintiff's rights under the ADA and the Fourteenth Amendment.

While plaintiff does satisfy the requirements to establish a § 1983 cause of action against employee defendants, her claim against them in their official capacities is barred by the Eleventh Amendment. It is well settled that § 1983 does not override the Eleventh Amendment. *Quern v. Jordan*, 440 U.S. 332, 345, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). *See also Dube v. State University of New York*, 900 F.2d 587, 594 (2d Cir.1990) ("Although Congress is empowered under section five of the Fourteenth Amendment to override Eleventh Amendment immunity and to enforce by appropriate legislation the substantive provisions of the Fourth Amendment ... it is well settled that 42 U.S.C. § 1983 does not constitute an exercise of that authority.").

However, state officials sued in their individual capacities are not immune from personal liability pursuant to § 1983. *Hafer v. Melo*, 502 U.S. 21, 31, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). As discussed, *supra*, *Ex parte Young* does not apply to cases in which plaintiff seeks damages from public funds. However, damages awards against individual defendants under § 1983 are permissible. *Hafer*, 502

U.S. at 30, 112 S.Ct. 358. "To be sure, imposing personal liability on state officers may hamper their performance of public duties. But such concerns are properly addressed within the framework of our personal immunity jurisprudence." *Id.* at 31, 112 S.Ct. 358.

Plaintiff's claims of violations of her rights pursuant to § 1983 against employee defendants in their official capacities will be dismissed and her claims against them in their individual capacities will be retained.

### III. Intentional Infliction of Emotional Distress

Plaintiff alleges that she suffered emotional distress as a result of employee defendants' intentional discriminatory practices. Defendants argue that she fails to state a claim in that she does not satisfy the test for the intentional infliction of emotional distress and only presents conclusory allegations regarding same.[5]

Section 1367 of Title 28 of the United States Code provides federal courts with jurisdiction over state law claims when they are so related to the action that they form part of the same case. *Punsalan v. Lantz,* 2006 WL 3050835, *5 (D.Conn. 2006). Here, plaintiff's state law claim of intentional infliction of emotional distress is entwined with defendants' alleged actions regarding her ADA claims.

■ To prevail on her claim of intentional infliction of emotional distress, plaintiff must establish: 1) that defendants intended to inflict emotional distress or knew or should have known that their conduct would likely result in emotional distress; 2) that the conduct was extreme and outrageous; 3) that the conduct in question was the cause of plaintiff's distress; and 4) that the emotional distress experienced by plaintiff was severe. *Appleton v. Board of Education of Town of Stonington,* 254 Conn. 205, 210, 757 A.2d 1059 (2000).

■ In the context of the employer-employee relationship, the court must assess whether the employer's conduct, not the employer's motive, was extreme or outrageous. *Armstead v. The Stop & Shop Companies, Inc.,* 2003 WL 1343245, *5 (D.Conn.). "Thus, claims of employer misconduct in the form of intentional discrimination or retaliation, including discharge, which challenge motive or intent, are dismissed unless the manifesting conduct is itself outrageous or extreme." *Id.* Firing an employee, in spite of any allegedly wrongful motive, does not qualify as extreme or outrageous conduct. *Campbell v. Town of Plymouth,* 74 Conn.App. 67, 78, 811 A.2d 243 (2002).

■ Defendants' conduct was well within the bounds of their professional authority. They accommodated plaintiff's needs for a reasonable period of time, providing her with a reduced workload and changing her schedule. They sought other appropriate employment for her. They did not terminate plaintiff until February 2002, seven months after they were first apprised of her condition. Their possible motivation for terminating plaintiff is not relevant, and neither her treatment nor her termination can be considered extreme and outrageous behavior on the part of defendants.

---

5. Defendants also argue that the Court should dismiss this state claim because plaintiff fails to state a claim regarding a federal issue and that the Court should therefore decline to exercise its pendent jurisdiction. Because there are federal claims against defendants remaining, the Court maintains jurisdiction over the claim for intentional infliction of emotional distress. *Murray v. Williams,* 2007 WL 430419, *7 (S.D.N.Y.) (declining to dismiss state law claims because federal claims remained).

The Court will dismiss plaintiff's claim of intentional infliction of emotional distress.

## CONCLUSION

For the foregoing reasons, defendants' motion for judgment on the pleadings [Doc. # 44] is DENIED in part and GRANTED in part.

It is DENIED as follows: count one's claims against employee defendants in their official capacities for prospective relief under Title I is not dismissed; count two's claims against DCF and employee defendants in their official capacities for monetary damages and prospective relief under Title II is not dismissed; and count three, insofar as her claims of violations under § 1983 are addressed to employee defendants in their individual capacities, is not dismissed.

Defendants' motion is GRANTED as follows: count one is dismissed insomuch as it is addressed to employee defendants in their individual capacities and claims monetary relief under Title I; count two is dismissed as to plaintiff's claims against employee defendants in their individual capacities; count three is dismissed insofar as it sets forth claims under § 1983 against employee defendants in their official capacities; and count four is dismissed in its entirety.