EUGENE P. MERCER *v.* DAVID STRANGE ET AL.
(AC 26616)

DiPentima, McLachlan and Hennessy, Js.

---

Argued February 17—officially released June 20, 2006

*Eugene P. Mercer*, pro se, the appellant (plaintiff).

*Terrence M. O'Neill*, assistant attorney general, with whom, on the brief, was *Richard Blumenthal*, attorney general, for the appellees (defendants).

*Opinion*

DiPENTIMA, J. The plaintiff, Eugene P. Mercer, appeals from the judgment of the trial court dismissing

his action seeking monetary damages, attorney's fees and declaratory and injunctive relief for the allegedly discriminatory actions of the defendants, employees of the department of correction (department).[1] On appeal, the plaintiff claims that the court improperly concluded that his claim under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq., and § 504 of the Rehabilitation Act of 1973 (Rehabilitation Act), 29 U.S.C. § 794,[2] was barred by General Statutes § 4-165, which provides for statutory immunity, because the complaint had not alleged facts sufficient to support a claim that the defendant state employees had acted wantonly, recklessly or maliciously. We reverse the judgment of the trial court.

The plaintiff commenced this action against the defendants by way of a four count complaint, in which he alleged that the defendants violated Title II of the ADA, § 504 of the Rehabilitation Act, the equal protection clause of the fourteenth amendment to the United States constitution, and article first, § 20, of the constitution of Connecticut, as amended by articles five and twenty-one of the amendments.[3] The complaint indicated that each of the defendants was being sued in

---

[1] The plaintiff named the following individuals as defendants: (1) David Strange, warden of the Osborn Correctional Institution (Osborn); (2) Dan Bannish, the health services program director and ADA administrator for the department of correction; (3) Sheila Hughes, a nursing supervisor and ADA facility coordinator at Osborn; (4) Patricia Wollenhaupt, a nursing supervisor and medical grievance coordinator at Osborn; (5) John Gitzus, the infectious disease specialist at Osborn; (6) Michele Cabana, the infectious disease nurse at Osborn; (7) Richard Stratton, the unit manager of the J1 housing unit at Osborn, which is a medical dormitory; and (8) Dennis Morgan, the grievance coordinator at Osborn.

[2] "Section 504 of the Rehabilitation Act and Title II of the ADA are applicable to inmates in state prisons." *Divine Allah* v. *Goord*, 405 F. Sup. 2d 265, 274 (S.D.N.Y. 2005).

[3] On appeal, the plaintiff challenges the court's judgment only as to his claims under the ADA and the Rehabilitation Act. Because the plaintiff no longer pursues his claims under the federal and state constitutions, we do not consider whether the court had subject matter jurisdiction over the litigation of those claims. We therefore decline the defendants' invitation

his or her official capacity. All of the plaintiff's claims stem from his belief that the defendants discriminated against him on the basis of his physical disability by refusing his request for placement in a single cell in the back of one of the housing facilities at the correctional institution in which he is housed. The defendants filed a motion to dismiss, stating that the plaintiff's claims were barred by the doctrines of sovereign immunity and statutory immunity. In a memorandum of decision dated March 28, 2005, the court dismissed the action, concluding that sovereign immunity was not an effective bar to the plaintiff's ADA and Rehabilitation Act claims, but that the plaintiff's state claims were barred by § 4-165 of the Connecticut General Statutes. Thereafter, the court rendered judgment of dismissal as to the entirety of the plaintiff's claims, and this appeal followed.[4]

The trial court's judgment was rendered and the parties' briefs to this court were filed prior to the United States Supreme Court's decision in *United States* v. *Georgia*, 546 U.S. 151, 126 S. Ct. 877, 163 L. Ed. 2d 650 (2006), in which the court explained the extent to which claims made pursuant to Title II of the ADA are not barred by the doctrine of sovereign immunity. At oral argument before this court, both parties requested that

to discuss those claims, even though they otherwise might bear on the court's subject matter jurisdiction, because the claims have been abandoned, and any discussion thereon would be purely academic. See *Knight* v. *Commissioner of Correction*, 81 Conn. App. 163, 164 n.1, 838 A.2d 1023, cert. denied, 268 Conn. 905, 845 A.2d 407 (2004).

[4] The court's memorandum of decision does not address the plaintiff's federal constitutional claim in any way. Additionally, the court's memorandum of decision states that the "state law claims" are barred by the doctrine of statutory immunity. Nonetheless, the court dismissed the action in its entirety after stating "statutory immunity applies, and the motion to dismiss is granted on that ground." We therefore read the court's decision as having granted the defendants' motion to dismiss all counts of the plaintiff's complaint on the ground of statutory immunity.

the case be remanded to the trial court for reconsideration in light of *United States* v. *Georgia,* supra, 151.[5] Although we agree with the parties that remand for this purpose is appropriate, we first must consider the propriety of the court's judgment dismissing the action on statutory immunity grounds because if the plaintiff's ADA and Rehabilitation Act claims are barred by statutory immunity, then any consideration of sovereign immunity is academic at best.[6]

## I

Prior to discussing the role of statutory immunity in this action, it is necessary to understand in what capacity the named defendants were sued. Throughout the course of this litigation, it has been understood that the plaintiff sued the defendants in their official capacities, and the complaint, in fact, alleges as much. Although a statement by the plaintiff that he has sued the defendants in their official capacities is not dispositive of the issue and is a question of law over which our review is plenary; see *Miller* v. *Egan,* 265 Conn. 301, 308, 828 A.2d 549 (2003); the nature of the pleadings and relief sought by this plaintiff clearly indicate that the suit is against the defendants in their official capacities. See id. "[A] suit against a state officer concerning a matter in which the officer represents the state is,

---

[5] The defendants did not address either in their brief or at oral argument before this court whether, on remand, the trial court should consider the plaintiff's claims under the Rehabilitation Act. The plaintiff, on the other hand, requested a remand for his claims to be considered under both the ADA and the Rehabilitation Act. We note that the release of the slip opinion in *United States* v. *Georgia,* supra, 546 U.S. 151, so close in time to oral argument in this case likely affected the parties' focus at oral argument. As indicated in this opinion, however, a remand for purposes of considering the plaintiff's claims under *both* the ADA and the Rehabilitation Act is appropriate.

[6] "[W]e have consistently held that we do not render advisory opinions. . . . [W]here the question presented is purely academic, we must refuse to entertain the appeal." (Internal quotation marks omitted.) *Echavarria* v. *National Grange Mutual Ins. Co.,* 275 Conn. 408, 419, 880 A.2d 882 (2005).

in effect, against the state." (Internal quotation marks omitted.) Id., 313. This is because a state can act only through its officers and agents. Id. In suits, therefore, in which the officials or agents are being sued for actions that concern matters in which they represent the state, we consider such suits as if they were solely against the state. See *Fetterman* v. *University of Connecticut*, 192 Conn. 539, 550–51, 473 A.2d 1176 (1984).

Having determined the capacity in which the named defendants have been sued, we now consider the propriety of the court's decision dismissing the plaintiff's claims on the ground of statutory immunity. "Claims involving the doctrines of common-law sovereign immunity and statutory immunity, pursuant to § 4-165, implicate the court's subject matter jurisdiction." *Manifold* v. *Ragaglia*, 94 Conn. App. 103, 113–14, 891 A.2d 106 (2006). A determination regarding a trial court's subject matter jurisdiction is a question of law over which our review is plenary. Id., 114.

It is well settled that the defense of sovereign immunity can be raised for claims brought directly against the state or against state employees acting in their official capacities. Likewise, the defense of statutory immunity can be raised for claims brought against state employees acting in their individual capacities. Id.; see also *Tuchman* v. *State*, 89 Conn. App. 745, 878 A.2d 384, cert. denied, 275 Conn. 920, 883 A.2d 1252 (2005). Because an action against state employees in their official capacities is, in effect, an action against the state; see *Miller* v. *Egan*, supra, 265 Conn. 313; the only immunity that can apply is the immunity claimed by the state itself— sovereign immunity. The United States Supreme Court explained this concept well in *Kentucky* v. *Graham*, 473 U.S. 159, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985), in which it stated: "In an official-capacity action, [individual capacity] defenses are unavailable. . . . The

only immunities that can be claimed in an official-capacity action are forms of sovereign immunity that the entity, qua entity, may possess, such as the Eleventh Amendment. While not exhaustive, this list illustrates the basic distinction between personal- and official-capacity actions." (Citations omitted.) Id., 167; see also *Hanna* v. *Capitol Region Mental Health Center*, 74 Conn. App. 264, 268, 812 A.2d 95 (2002) ("[b]y its own terms, § 4-165 applies only to state officers and employees sued in their personal capacities, and is therefore inapplicable to [whether state officers or employees sued in their official capacities are] immune from suit").

We have concluded that the plaintiff brought this action against the named defendants solely in their official capacities. Because suing these state employees in their official capacities is tantamount to bringing the action against the state, the only immunity defense available to these defendants is sovereign immunity. The court, therefore, improperly granted the defendants' motion to dismiss on the ground of statutory immunity.

II

Because the court denied the defendants' motion to dismiss on the ground of sovereign immunity, the plaintiff does not address the applicability of the defense of sovereign immunity to his claim under the Rehabilitation Act. The defendants also did not brief this question and instead stated: "On appeal, [the] plaintiff assumes that the trial court dismissed his claims under the Rehabilitation Act. The defendants do not read the trial court's decision as such, and [do] not address the Rehabilitation Act claim in this memorandum." Although we agree with the defendants that the court's decision does not dispose of the plaintiff's claim under the Rehabilitation Act in a clear and articulate manner, it nonetheless is true that the plaintiff's complaint was dismissed in

its entirety, including the claim made pursuant to the Rehabilitation Act. We therefore disagree with the defendants that the court did not dismiss the plaintiff's claim under the Rehabilitation Act.

We consider whether the defense of sovereign immunity is applicable to claims raised under the Rehabilitation Act because the question implicates the court's subject matter jurisdiction. See *Manifold* v. *Ragaglia,* supra, 94 Conn. App. 113–14. As with determinations made by the trial court regarding the applicability of statutory immunity, our review of the court's conclusions regarding sovereign immunity is plenary. Id.

It is well settled law in this jurisdiction that Congress intended states' acceptance of federal funds to constitute waiver of their sovereign immunity under the eleventh amendment as to claims under the Rehabilitation Act.[7] *Lane* v. *Pena,* 518 U.S. 187, 198–200, 116 S. Ct. 2092, 135 L. Ed. 2d 486 (1996); *Garcia* v. *S.U.N.Y. Health Sciences Center,* 280 F.3d 98, 113–15 (2d Cir. 2001).

---

[7] Section 504 of the Rehabilitation Act of 1973, codified at 29 U.S.C. § 794 (a), provides in relevant part: "No otherwise qualified individual with a disability in the United States, as defined in section 706 (20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." Additionally, 42 U.S.C. § 2000d-7 (a) (1) provides in relevant part: "A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973 . . . ."

Although the specific language of the ADA abrogates sovereign immunity only for suits brought in federal court, we previously recognized that because the Rehabilitation Act is in accord with the ADA, which may be enforced in either state or federal court; see 42 U.S.C. § 12202; plaintiffs bringing claims under both the Rehabilitation Act and the ADA may pursue those claims in Connecticut state courts. *Mercer* v. *Rodriguez,* 83 Conn. App. 251, 266, 849 A.2d 886 (2004); see also *Capitano* v. *State,* 178 Ariz. 599, 601 n.2, 875 P.2d 832 (1993); *White* v. *California,* 195 Cal. App. 3d 452, 461 n.3, 240 Cal. Rptr. 732 (1987); *Shields* v. *Shreveport,* 579 So. 2d 961, 965–67 (La. 1991); *Elek* v. *Huntington National Bank,* 60 Ohio St. 3d 135, 138–40, 573 N.E.2d 1056 (1991).

This waiver applies both to claims seeking injunctive relief; *Henrietta D.* v. *Bloomberg*, 331 F.3d 261, 288–89 (2d Cir. 2003), cert. denied, 541 U.S. 936, 124 S. Ct. 1658, 158 L. Ed. 2d 356 (2004); and to claims seeking monetary damages. *Garcia* v. *S.U.N.Y. Health Sciences Center*, supra, 115;[8] *Myslow* v. *New Milford School District*, 2006 U.S. Dist. LEXIS 9868 *27–28 (D. Conn. 2006); *Sacca* v. *Buffalo State College*, 2004 U.S. Dist. LEXIS 9134 *11–18 (W.D.N.Y. 2004); *Johnson* v. *Southern Connecticut State University*, 2004 U.S. Dist. LEXIS 21084 *9 (D. Conn. 2004); *Doe* v. *Goord*, 2004 U.S. Dist. LEXIS 24808 *57–60 (S.D.N.Y. 2004). The plaintiff has alleged in his complaint that the department receives federal funding, which would subject the department to the provisions of the Rehabilitation Act. See *Powell* v. *National Board of Medical Examiners*, 364 F.3d 79, 85 (2d Cir. 2004). We therefore conclude that the plaintiff has alleged facts sufficient to defeat the defense of sovereign immunity as to his claim under the Rehabilitation Act.[9]

[8] Although *Garcia* held that New York's acceptance of funds under the Rehabilitation Act was insufficient to waive its sovereign immunity under the Rehabilitation Act, that holding was limited to the circumstances surrounding the case, specifically that, during the time in question, New York was under the belief that Title II of the ADA acted as an abrogation of its sovereign immunity, making any concurrent waiver under the Rehabilitation Act inconsequential. After *Garcia*, Connecticut could not rely on abrogation under Title II, and therefore knowingly and intentionally waived its sovereign immunity under the Rehabilitation Act when accepting federal funds. See *Degrafinreid* v. *Ricks*, 2006 U.S. Dist. LEXIS 7839 *26–30 (S.D.N.Y. 2006).

[9] On remand, however, to prevail on this claim, the plaintiff must establish that (1) he is a "qualified individual" with a disability, as that term is defined in the Rehabilitation Act, (2) he is "otherwise qualified" to participate in the offered program or activity or to enjoy the services or benefits offered, (3) he is being denied the opportunity to participate in or benefit from the defendants' services, programs or activities, or was otherwise discriminated against by the defendants by reason of his disability and (4) the defendants, or the entity they represent, receive federal financial assistance so as to be subject to the Rehabilitation Act. See *Clarkson* v. *Coughlin*, 898 F. Sup. 1019, 1036 (S.D.N.Y. 1995); see also *Henrietta D.* v. *Bloomberg*, supra, 331 F.3d 272.

### III

Having concluded that proper disposition of this appeal includes a remand to the trial court for consideration of the plaintiff's claim under the Rehabilitation Act, we must determine whether the court on remand also must address the plaintiff's claim under the ADA. As indicated previously, the legal landscape in this area has changed significantly since the trial court's initial consideration of the plaintiff's claim because of the United States Supreme Court's decision in *United States* v. *Georgia*, supra, 546 U.S. 151.

There is no question that Congress, in enacting the ADA, intended to abrogate the states' sovereign immunity from liability and suit under the eleventh amendment. Codified at 42 U.S.C. § 12202, the relevant provision of the ADA provides: "A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of this chapter. In any action against a State for a violation of the requirements of this chapter, remedies (including remedies both at law and in equity) are available for such a violation to the same extent as such remedies are available for such a violation in an action against any public or private entity other than a State." In abrogating the states' immunity in this manner, Congress sought "to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment . . . in order to address the major areas of discrimination faced day-to-day by people with disabilities." 42 U.S.C. § 12101 (b) (4). Until recently, however, the question has remained whether and to what extent the abrogation of sovereign immunity was valid congressional action.

The United States Supreme Court's decision in *United States* v. *Georgia*, supra, 546 U.S. 151, answered

this question in part. The court held that when a claim under the ADA is made for conduct that violates the fourteenth amendment, either by violation of one of the stated provisions of that amendment or by violation of one of the amendments that has been incorporated into the fourteenth amendment guarantee of due process, Title II of the ADA validly abrogates states' sovereign immunity.[10] Id., 158–59. Therefore, on remand, the court must consider whether any of the actions of which the plaintiff complains constitutes a constitutional violation. If the court concludes that the complaint alleges constitutional violations, the court then must consider whether these violations also are covered under the ambit of Title II of the ADA. To the extent that the alleged conduct both constitutes a constitutional violation and is forbidden under the ADA, the defense of sovereign immunity does not apply to bar the plaintiff's claim.

It is unclear however, even after *United States* v. *Georgia*, supra, 546 U.S. 151, whether Congress' abrogation of states' sovereign immunity under the ADA is valid as it applies to conduct that does not violate the fourteenth amendment. The Supreme Court remanded this question to the United States Court of Appeals for the Eleventh Circuit for consideration in the first instance. Id., 159. We likewise remand this issue to the trial court insofar as the plaintiff's complaint may implicate it. To that end, the court, on remand, should consider (1) which aspects of the defendants' alleged conduct violated the ADA; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated the ADA but

[10] Previously, in *Tennessee* v. *Lane*, 541 U.S. 509, 124 S. Ct. 1978, 158 L. Ed. 2d 820 (2004), the court concluded that Title II of the ADA was a valid abrogation of states' sovereign immunity insofar as it sought to prohibit state conduct that infringed on certain fundamental rights, such as access to the courts.

did not violate the Fourteenth Amendment, whether Congress' purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid. See id. In considering any portion of the plaintiff's claim that alleges conduct that comes within the scope of the ADA, but does not violate any constitutional guarantee so that it falls within the prophylactic aspects of the ADA,[11] the court must consider whether that aspect of the legislation exhibits "a congruence and proportionality between the injury to be prevented or remedied and the means to be adopted to that end." (Internal quotation marks omitted.) *Tennessee* v. *Lane*, 541 U.S. 509, 520, 124 S. Ct. 1978, 158 L. Ed. 2d 820 (2004). If the portion of the legislation triggered by the plaintiff's claim is congruent and proportional to the injury to be prevented, then the abrogation of the defendants' sovereign immunity is valid as to that claim, and further litigation of the plaintiff's claim may proceed.

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other judges concurred.

---

[11] Those aspects of the ADA that are prophylactic in nature proscribe facially constitutional conduct in order to prevent and to deter unconstitutional conduct. *Tennessee* v. *Lane*, supra, 541 U.S. 518. Under § 5 of the fourteenth amendment, Congress' power "includes the authority both to remedy and to deter violation of the rights guaranteed [by the Fourteenth Amendment] by prohibiting a somewhat broader swath of conduct, including that which is not itself forbidden by the Amendment's text." (Internal quotation marks omitted.) Id.