EUGENE P. MERCER *v.* WALTER CHAMPION ET AL.
(AC 33656)

Alvord, Bear and Flynn, Js.

Argued September 24—officially released November 20, 2012

*Eugene P. Mercer,* pro se, the appellant (plaintiff).

*Daniel Shapiro,* assistant attorney general, with whom, on the brief, was *George Jepsen,* attorney general, for the appellee (defendants).

*Opinion*

FLYNN, J. The pro se plaintiff, Eugene P. Mercer, incarcerated for felony murder,[1] appeals from the judgment of the trial court granting the defendants',[2]

---

[1] See *State* v. *Mercer,* 208 Conn. 52, 544 A.2d 611 (1988).

[2] The following individuals were named as defendants: (1) Walter Champion, Americans with Disabilities Act (ADA) coordinator of Osborn Correctional Institution (Osborn); (2) Wanda White-Lewis, ADA director and director of field services for the department; (3) David Strange, warden of Osborn; (4) Patricia Wollenhaupt, nursing supervisor and medical ADA grievance coordinator at Osborn; and (5) Brian Hicock, health service administrator and ADA grievance coordinator at Osborn.

employees of the department of correction (department), motion to strike the entirety of the plaintiff's complaint seeking monetary damages, attorney's fees and declaratory and injunctive relief for the allegedly discriminatory actions of the defendants. On appeal, the plaintiff claims that the court improperly struck his complaint for failing to plead sufficient facts to support any of these claims. We affirm the judgment of the court.

The following factual and procedural history is relevant to our resolution of the plaintiff's appeal. The plaintiff commenced this action by way of a four count complaint, entitled by the plaintiff as "causes of action," dated July 3, 2007, in which he alleged that the defendants violated Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq.,[3] § 504 of the Rehabilitation Act of 1973 (Rehabilitation Act), 29 U.S.C. § 701 et seq.,[4] the equal protection clause of the fourteenth amendment to the United States constitution[5] and article first, § 20, of the constitution of Connecticut, as amended by articles five and twenty-one of the amendments.[6] The plaintiff indicated in his complaint that each defendant was sued in his or her official capacity.

---

[3] Title II of the ADA, codified at 42 U.S.C. § 12132, provides in relevant part: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

[4] Section 504 of the Rehabilitation Act, codified at 29 U.S.C. § 794, provides in relevant part: "(a) No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ."

[5] The equal protection clause of the fourteenth amendment to the United States constitution provides in relevant part: "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws."

[6] Article first, § 20, of the constitution of Connecticut, as amended by articles five and twenty-one of the amendments, provides in relevant part: "No person shall be denied the equal protection of the law . . . ."

The plaintiff alleged that he is afflicted with two neurological disorders that affect his balance, coordination and ability to walk. The plaintiff further alleged that he requested a "modification of . . . rules, policies, practices and procedures" of Osborn Correctional Institution (Osborn) to allow him "access to practice a musical instrument on a daily basis, either by allowing access or allowing plaintiff to possess a portable keyboard with headphones for personal use as a specialized recreational activity," but his request was denied by the defendants. The plaintiff stated that his request was denied because the defendants were engaged in intentional discrimination against him because of his physical disability. The plaintiff further stated that he is entitled to this "specialized recreational activity" because his disability prevents him from participating in "contact sports or activities" that nondisabled inmates have access to, such that he "is restricted to board games, weightlifting, library and the band program twice a week." The plaintiff alleged that he filed a grievance and exhausted his administrative remedies with the department before filing his complaint.

On February 8, 2008, the defendants filed a motion to strike alleging that the plaintiff failed in each count to state a claim upon which relief can be granted. The court granted the motion to strike on December 5, 2008, because the plaintiff never "alleged that he was treated differently from others as a result of his disability. In fact, he is requesting specific relief unavailable to others . . . ." In accordance with Practice Book § 10-44,[7] the plaintiff filed a substitute pleading on January 9, 2009. The plaintiff's substitute complaint differed from his original complaint only by the addition of one paragraph: "The plaintiff alleges that he is being treated

[7] Practice Book § 10-44 states in relevant part: "Within fifteen days after the granting of any motion to strike, the party whose pleading has been stricken may file a new pleading . . . ."

differently from other inmates as a result of his disability. Reasonable accommodations in the area of recreational activities have been granted to other inmates. The plaintiff is being treated differently than others similarly situated."

The defendants filed their second motion to strike on June 19, 2009. In this motion, the defendants argued that the plaintiff's additional paragraph "does not add any substantive claims" and, like the plaintiff's original complaint, "fails to state a claim upon which relief can be granted . . . ." The defendants also argued that "monetary damages are not available when [the] plaintiff has failed to establish that the alleged ADA and [Rehabilitation Act] violations were motivated by discriminatory animus or ill will due to the disability." Finally, the defendants incorporated all of their legal arguments previously made in their first motion to strike into their second motion to strike. The court granted the second motion to strike on July 12, 2010.

In the court's memorandum of decision, dated July 12, 2010, it addressed the motion to strike in three parts—first addressing the counts related to money damages, then declaratory and injunctive relief and, finally, the constitutional claims. The court read the plaintiff's action against the defendants, state department employees, as an action against the state, subject to sovereign immunity unless the plaintiff pleaded that the ADA violation was motivated by discriminatory animus or ill will stemming from his disability. The court first concluded that the plaintiff "[did] not allege *facts* rising to the level of discriminatory animus or ill will," such that "his ADA claim is barred and must be stricken." (Emphasis in original.) Next, the court concluded that although "[t]he complaint contains allegations sufficient to demonstrate that the plaintiff is a qualified individual under both [the ADA and the Rehabilitation Act] and that the defendants are subject to

the provisions . . . the complaint fails to properly allege that the plaintiff was denied an opportunity to participate in or benefit from the defendants' services, programs or activities as a result of his disability. . . . Nor does the plaintiff allege facts related to any other perceived discrimination." The court concluded that, "[a]side from his conclusory allegation that he is treated differently from others who are similarly situated, the plaintiff has failed to plead any *facts* . . . sufficient to establish a cognizable equal protection claim under either the federal or state constitution." (Emphasis in original.) The court also stated: "[T]he plaintiff has failed to allege that other inmates . . . were provided with the type of accommodation he requested, such as individual possession of a musical instrument or alternative in-cell recreational resources, *and* that any such failure to provide such an accommodation to the plaintiff was because of the plaintiff's particular disability or disabled status." (Emphasis in original.) Thereafter, on August 23, 2010, the court rendered judgment for the defendants, striking the entirety of the plaintiff's complaint, and this appeal followed.

On appeal, the plaintiff claims that the court erred in striking his (1) claims for monetary damage under Title II of the ADA for failing to plead facts that demonstrate discriminatory animus or ill will, (2) claims for declaratory and injunctive relief for failing to plead sufficient facts under the ADA and the Rehabilitation Act and (3) constitutional equal protection claims for failing to plead sufficient facts.[8] We begin by setting

---

[8] In the plaintiff's "Statement of Issues" he set forth the following two issues: "(1) Whether the trial court erred in striking [the] plaintiff's claims for failing to allege facts that demonstrate discriminatory animus" and "(2) Whether the trial court erred in striking [the] plaintiff's claims for failing to sufficiently plead facts to establish a cognizable equal protection claim." The plaintiff's argument section of his brief set forth: "Whether the trial court erred in striking [the] plaintiff's claims for monetary damages because the plaintiff failed to plead facts that demonstrate discriminatory animus or ill will," "Whether [the] plaintiff's allegations need to allege discriminatory animus," "Whether [the] trial court erred in striking [the] plaintiff's claims

forth our standard of review and the principles that guide our analysis.

"The standard of review in an appeal challenging a trial court's granting of a motion to strike is well established. A motion to strike challenges the legal sufficiency of a pleading, and, consequently, requires no factual findings by the trial court. As a result, our review of the court's ruling is plenary. . . . We take the facts to be those alleged in the complaint that has been stricken and we construe the complaint in the manner most favorable to sustaining its legal sufficiency. . . . Thus, [i]f facts provable in the complaint would support a cause of action, the motion to strike must be denied." (Internal quotation marks omitted.) *Sullivan* v. *Lake Compounce Theme Park, Inc.*, 277 Conn. 113, 117–18, 889 A.2d 810 (2006). "[W]e assume the truth of both the specific factual allegations and any facts fairly provable thereunder." (Internal quotation marks omitted.) *Himmelstein* v. *Windsor*, 304 Conn. 298, 307, 39 A.3d 1065 (2012). A "[motion to strike] admits all *facts* well pleaded; it does not admit *legal conclusions or the truth or accuracy of opinions* stated in the pleadings." (Emphasis in original.) *Mingachos* v. *CBS, Inc.*, 196 Conn. 91, 108, 491 A.2d 368 (1985).

I

The first issue before us is whether the court erred in striking the plaintiff's claim for monetary damages under Title II of the ADA for failing to plead facts that demonstrate discriminatory animus or ill will. The trial court classified the plaintiff's complaint as an action

for declaratory and injunctive relief," "Whether discriminatory animus is required under the ADA and [Rehabilitation Act] for injunctive and declaratory relief," "Whether the allegations have sufficiently plead[ed] facts to establish a cognizable equal protection claim" and "Whether [the] plaintiff need identify a 'comparison class' of similarly situated individuals in discrimination claims under reasonable accommodation theory." We have reframed these issues so that they better represent the plaintiff's claims on appeal.

against the state "[b]ecause the complaint claims money damages against the defendants in their official capacity . . . ." Due to this classification, the question then became whether sovereign immunity applied to shield the state from the claim. Relying on *Garcia* v. *S.U.N.Y. Health Sciences Center*, 280 F.3d 98 (2d Cir. 2001), the trial court held that "any such claim . . . [required] that the plaintiff plead and prove that any violation of Title II of the ADA was motivated by discriminatory animus or ill will due to his disability." We disagree with the court's treatment of *Garcia*.

We briefly address the threshold assessment of the capacity in which the named defendants were sued. Although it is true that during the course of the litigation, it has been understood that the plaintiff sued the defendants in their official capacities, which is echoed in the plaintiff's complaint, "a statement by the plaintiff that he has sued the defendants in their official capacities is not dispositive of the issue and is a question of law over which our review is plenary . . . ." *Mercer* v. *Strange*, 96 Conn. App. 123, 127, 899 A.2d 683 (2006). "[A] suit against a state officer concerning a matter in which the officer represents the state is, in effect, against the state." (Internal quotation marks omitted.) *Miller* v. *Egan*, 265 Conn. 301, 313, 828 A.2d 549 (2003). The plaintiff's complaint and the monetary relief sought by the plaintiff in the present action clearly indicates that the defendants are being sued over a matter in which each defendant represents the state, such that this is an action against the state.

"In Connecticut, we have long recognized the validity of the common-law principle that the state cannot be sued without its consent," otherwise known as sovereign immunity. *Horton* v. *Meskill*, 172 Conn. 615, 623, 376 A.2d 359 (1977). "To overcome the presumption of sovereign immunity . . . a plaintiff seeking to bring a claim against the state must establish that an exception

to the doctrine applies." (Citation omitted; internal quotation marks omitted.) *Housatonic Railroad Co.* v. *Commissioner of Revenue Services*, 301 Conn. 268, 275, 21 A.3d 759 (2011). Specifically, under the ADA, Congress "invoke[d] the sweep of congressional authority, including the power to enforce the fourteenth amendment . . . ." 42 U.S.C. § 12101 (b) (4). Congress further stated that "[a] State shall not be immune under the eleventh amendment to the [c]onstitution of the United States from an action in [a] Federal or State court of competent jurisdiction for a violation of this chapter."[9] 42 U.S.C. § 12202.

In *Garcia*, the court addressed the interplay of sovereign immunity and private actions for money damages under the ADA. "Section 5 of the [f]ourteenth [a]mendment . . . does grant Congress the authority to abrogate the States' sovereign immunity. . . . Thus, if Title II is a valid exercise of Congress's § 5 power, then nonconsenting states may be hailed into federal court by private individuals seeking money damages."[10] (Citation omitted; internal quotation marks omitted.) *Garcia* v. *S.U.N.Y. Health Sciences Center*, supra, 280 F.3d 108. Although the court found that "Title II in its entirety exceeds Congress's authority under § 5 . . . Title II need only comport with Congress's § 5 authority to the extent that the title allows private damage suits against states for violations." Id., 110. In examining the issue, the court set out to "restrict the availability of Title II monetary suits against the states in a manner that is

_____

[9] Title 42 of the United States Code, § 12202, has been accepted by the United States Supreme Court "as an unequivocal expression of Congress's intent to abrogate state sovereign immunity. See *Board of Trustees of [University of Alabama]* v. *Garrett*, 531 U.S. 356, 363–64 [121 S. Ct. 955, 148 L. Ed. 2d 866] (2001)." *United States* v. *Georgia*, 546 U.S. 151, 154, 126 S. Ct. 877, 163 L. Ed. 2d 650 (2006).

[10] Section 5 of the fourteenth amendment to the United States constitution states: "The Congress shall have power to enforce, by appropriate legislation, the provisions of this article."

consistent with Congress's § 5 authority, and that thereby validly abrogates state sovereign immunity from private monetary suits under Title II." Id., 111. The court's solution was to hold "that a showing of discriminatory animus or ill will based on disability is necessary to recover damages under Title II in a private action against a state . . . ." Id., 112.

The issue of whether Title II of the ADA validly abrogated state sovereign immunity was addressed by the Supreme Court in *United States* v. *Georgia*, 546 U.S. 151, 156, 126 S. Ct. 877, 163 L. Ed. 2d 650 (2006). "While the Members of this Court have disagreed regarding the scope of Congress's 'prophylactic' enforcement powers under § 5 of the [f]ourteenth [a]mendment . . . no one doubts that § 5 grants Congress the power to 'enforce . . . the provisions' of the [a]mendment by creating private remedies against the [s]tates for *actual* violations of those provisions." (Citations omitted; emphasis in original.) Id., 158. On the basis of that rationale, the Supreme Court held that "insofar as Title II creates a private cause of action for damages against the [s]tates for conduct that *actually* violates the [f]ourteenth [a]mendment, Title II validly abrogates state sovereign immunity." (Emphasis in original.) Id., 159.

The Second Circuit has not yet addressed the effect *Georgia* has on its previous holding in *Garcia*; however, district courts have attempted to reconcile the two holdings. See *Andino* v. *Fischer*, 698 F. Sup. 2d 362, 377 n.2 (S.D.N.Y. 2010); *Fox* v. *Poole*, United States District Court, Docket No. 06-CV-148 (HS)(W.D.N.Y. August 12, 2008); *Castells* v. *Fisher*, United States District Court, Docket No. 05-CV-4866 (SJ) 2007 WL 1100850 (E.D.N.Y. March 24, 2007). "The result is that it remains unclear whether the discriminatory animus requirement articulated in *Garcia* remains in place following *Georgia*. Nevertheless, because *Garcia* applied the discriminatory animus test in order to address the question of

abrogation, *Georgia*'s comprehensive test logically would supersede *Garcia*'s animus requirement . . . ." *Andino* v. *Fischer*, supra, 377 n.2.

Shortly after the decision in *Georgia* was issued, this court, in *Mercer* v. *Strange*,[11] supra, 96 Conn. App. 133, addressed how private actions against the state of Connecticut for money damages under Title II of the ADA must be analyzed: "[T]he court must consider whether any of the actions of which the plaintiff complains constitutes a constitutional violation. If the court concludes that the complaint alleges constitutional violations, the court then must consider whether these violations also are covered under the ambit of Title II of the ADA. To the extent that the alleged conduct both constitutes a constitutional violation and is forbidden under the ADA, the defense of sovereign immunity does not apply to bar the plaintiff's claim." Therefore, in accordance with *Georgia*, as followed in *Mercer*, as long as the private cause of action against the state for money damages stems from conduct that violates the fourteenth amendment, Title II validly abrogates state sovereignty without necessitating a showing of discriminatory animus or ill will. See *United States* v. *Georgia*, supra, 546 U.S. 159.

"The [e]qual [p]rotection [c]lause of the [f]ourteenth [a]mendment to the United States [c]onstitution is essentially a direction that all persons similarly situated should be treated alike." (Internal quotation marks omitted.) *Brooks* v. *Sweeney*, 299 Conn. 196, 218, 9 A.3d

---

[11] We should note that the plaintiff in *Mercer* v. *Strange* is the same plaintiff in this instant action. In *Mercer*, the plaintiff similarly sought relief under the ADA, the Rehabilitation Act, the equal protection clause of the fourteenth amendment to the United States constitution and article first, § 20, of the constitution of Connecticut, as amended by articles five and twenty-one of the amendments, for the defendants' denial of his request to be placed in a single cell in the back of one correctional institution housing facility. *Mercer* v. *Strange*, supra, 96 Conn. App. 125–26.

347 (2010). The ADA states in relevant part: "[N]o quali-
fied individual with a disability shall, by reason of such
disability, be excluded from participation in or be
denied the benefits of the services, programs, or activi-
ties of a public entity, or be subjected to discrimination
by any such entity." 42 U.S.C. § 12132. In the plaintiff's
substitute pleading, "[t]he plaintiff alleges that he is
being treated differently from other inmates as a result
of his disability. Reasonable accommodations in the
area of recreational activities have been granted to
other inmates. The plaintiff is being treated differently
than others similarly situated." If properly pleaded, the
conduct alleged by the plaintiff would be conduct that
would violate the fourteenth amendment.[12] Further-
more, if properly pleaded, the conduct alleged by the
plaintiff also would be covered under the ADA because
the plaintiff is alleging disparate treatment by reason
of his disability. Because the alleged conduct could
constitute both a constitutional violation and a violation
of the ADA, the plaintiff's private cause of action against
the state for money damages under Title II validly abro-
gates state sovereign immunity. See *United States* v.
*Georgia,* supra, 546 U.S. 159; *Mercer* v. *Strange,* supra,
96 Conn. App. 133.

We therefore do not agree with the trial court's hold-
ing that *Georgia* "did not disturb prior law in the Second
Circuit that held that an element of any such claim was
the requirement that the plaintiff plead and prove that
any violation of Title II of the ADA was motivated by
discriminatory animus or ill will due to his disability."
Although the court improperly granted the motion to
strike with respect to the plaintiff's ADA claim for mone-
tary damage on the ground that it did not allege discrimi-
natory animus or ill will, we conclude that the error
was harmless because the plaintiff's entire underlying

---

[12] We will address the sufficiency of the plaintiff's pleading regarding the
alleged fourteenth amendment violation in part III of this opinion.

claim was subject to a properly granted motion to strike on other grounds as will be discussed subsequently in this opinion. See *Carrubba* v. *Moskowitz*, 81 Conn. App. 382, 400, 840 A.2d 557 (2004), aff'd, 274 Conn. 533, 877 A.2d 773 (2005).

## II

On appeal, the plaintiff claims that the trial court erred in striking his claims seeking declaratory and injunctive relief for failing to plead sufficient facts under the ADA and the Rehabilitation Act. The state of Connecticut retains fact pleading for civil complaints. Practice Book § 10-1 provides in relevant part: "Each pleading shall contain a plain and concise statement of the material facts on which the pleader relies . . . ." "A motion to strike is properly granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged." *Novametrix Medical Systems, Inc.* v. *BOC Group, Inc.*, 224 Conn. 210, 215, 618 A.2d 25 (1992).

It is well established that "[s]ection 504 of the Rehabilitation Act and Title II of the ADA are applicable to inmates in state prisons." *Divine Allah* v. *Goord*, 405 F. Sup. 2d 265, 274 (S.D.N.Y. 2005). A prisoner's claim under Title II of the ADA consists of three elements, which the prisoner must establish: "(1) he or she is a 'qualified individual with a disability'; (2) he or she is being excluded from participation in, or being denied the benefits of some service, program, or activity by reason of his or her disability; and (3) the entity [that] provides the service, program, or activity is a public entity."[13] (Internal quotation marks omitted.) Id.

[13] Because of the significant overlap between the ADA and the Rehabilitation Act, we will address simultaneously the plaintiff's complaint requesting injunctive and declaratory relief under both the ADA and the Rehabilitation Act and make distinctions as necessary.

For a plaintiff to prevail on a claim under § 504 of the similar, but distinct, Rehabilitation Act, "the plaintiff must establish that (1) he is a 'qualified individual' with a disability, as that term is defined in the Rehabilitation Act, (2) he is 'otherwise qualified' to participate in the offered program or activity or to enjoy the services or benefits offered, (3) he is being denied the opportunity to participate in or benefit from the defendants' services, programs or activities, or was otherwise discriminated against by the defendants by reason of his disability and (4) the defendants, or the entity they represent, receive federal financial assistance so as to be subject to the Rehabilitation Act." *Mercer* v. *Strange*, supra, 96 Conn. App. 131 n.9.

Both the ADA and the Rehabilitation Act require the plaintiff to establish that he is a qualified individual with a disability. A "qualified individual with a disability" under the ADA is defined as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131 (2). A "disability" under the ADA is defined as "a physical or mental impairment that substantially limits one or more major life activities of such individual . . . ." 42 U.S.C. § 12102 (1) (A). "Major life activities" under the ADA include walking and standing. 42 U.S.C. § 12102 (2) (A). The Rehabilitation Act has incorporated the definition of an "individual with a disability" found in the ADA. 29 U.S.C. § 705 (20) (B); see 29 U.S.C. § 794. In the plaintiff's complaint, he alleges that he is a qualified individual with a disability because his medical disorders impair his major life activity of walking. The plaintiff's complaint therefore contains sufficient allegations

to demonstrate that the plaintiff is a qualified individual with a disability under both the ADA and the Rehabilitation Act.

Under the ADA, the entity that provides the activity must be a public entity, while under the Rehabilitation Act the entity must receive federal financial assistance. *Divine Allah* v. *Goord*, supra, 405 F. Sup. 2d 274–75. A public entity is defined to include any state government, as well as any department of a state. 42 U.S.C. § 12131 (1) (A) and (B). Here, the entity in question is Osborn, a state prison, which is considered a public entity under the ADA. *Divine Allah* v. *Goord*, supra, 274. Furthermore, the plaintiff alleges in his complaint that "[t]he [department] is the recipient of federal financial funds. On information and belief, the [department] received [$450,000] in federal funds for the 2006 Prisoner Reentry Initiative." The plaintiff's complaint therefore sufficiently alleges that the entity receives federal financial assistance in satisfaction of the Rehabilitation Act.[14]

One element under the Rehabilitation Act that is not required under the ADA is that the plaintiff would be otherwise qualified to participate in the program, activity, services or benefits offered. Compare *Mercer* v. *Strange*, supra, 96 Conn. App. 131 n.9, with *Divine Allah* v. *Goord*, supra, 405 F. Sup. 2d 274–75. The United States Supreme Court has held that under the Rehabilitation Act "[a]n otherwise qualified person is one who is able to meet all of a program's requirements in spite of his handicap." *Southeastern Community College* v. *Davis*, 442 U.S. 397, 406, 99 S. Ct. 2361, 60 L. Ed. 2d 980 (1979). Although the plaintiff does not say explicitly that he is otherwise qualified for the activities at Osborn,

[14] Sovereign immunity with respect to the plaintiff's claims for declaratory and injunctive relief under the Rehabilitation Act is not implicated because the state of Connecticut knowingly and intentionally waived its sovereign immunity when it accepted these federal funds. See *Mercer* v. *Strange*, supra, 96 Conn. App. 131 n.8.

"[w]hat is necessarily implied [in an allegation] need not be expressly alleged. . . . It is fundamental that in determining the sufficiency of a complaint challenged by a defendant's motion to strike, all well-pleaded facts and those facts necessarily implied from the allegations are taken as admitted. . . . Indeed, pleadings must be construed broadly and realistically, rather than narrowly and technically." (Internal quotation marks omitted.) *Bloom* v. *Miklovich*, 111 Conn. App. 323, 328, 958 A.2d 1283 (2008).

In his complaint, the plaintiff alleges that his "disabilities prohibit his equal access to the multitude of recreational activities provided to non-disabled general population inmates on an almost daily basis. . . . [T]he plaintiff is restricted to board games, weightlifting, library and the band program twice a week." The plaintiff also quoted the defendants' denial of his request that stated in relevant part: "Due to your ability to participate in [the weight room, library and band program] it is clear that you have access to several recreational activities afforded to the inmate population at Osborn . . . ."

The plaintiff, therefore, alleges that but for his disability he would be able to participate in the other recreational activities. Furthermore, the plaintiff alleges to already have access to other recreational activities, such as weightlifting and band practice. When taken together, the facts necessarily implied from the plaintiff's allegations are sufficient to satisfy the Rehabilitation Act requirement that the plaintiff be otherwise qualified.

The final element that the plaintiff must sufficiently allege under both the ADA and the Rehabilitation Act is that the plaintiff is being excluded from participation in or denied the benefits of an activity by the defendants

because of his disability.[15] 29 U.S.C. § 794 (a); 42 U.S.C. § 12132. The plaintiff alleges that his "disabilities prohibit his equal access to the multitude of recreational activities provided to [the] non-disabled general population inmates on an almost daily basis" and that he "does not have access to 'like' activities, nor is his access to recreational activities equivalent to non-disabled inmates." The accommodation that the plaintiff is requesting under both the ADA and the Rehabilitation Act is "access to practice a musical instrument on a daily basis, either by allowing access or allowing [the] plaintiff to possess a portable keyboard with headphones for personal use as a specialized recreational activity."

"[T]he central purpose of the ADA and § 504 of the Rehabilitation Act is to assure that disabled individuals receive 'evenhanded treatment' in relation to the able-bodied." *Doe* v. *Pfrommer*, 148 F.3d 73, 83 (2d Cir. 1998). In order to deliver such even treatment, "[a] public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130 (b) (7). With respect to these accommodations, a distinction is made "between (i) making reasonable accommodations to assure access to an existing program and (ii) providing additional or different substantive benefits. . . . [T]he ADA requires only that a particular service provided to some not be denied to disabled people . . . ." (Citation omitted; internal quotation marks omitted.) *Wright* v. *Giuliani*, 230 F.3d 543, 548 (2d Cir. 2000). "The thrust of . . . cases [addressing this issue] is that the disabilities statutes

---

[15] The Rehabilitation Act has the requirement that the exclusion be "solely" by reason of the disability. 29 U.S.C. § 794 (a).

do not require that substantively different services be provided to the disabled, no matter how great their need for the services may be. They require only that covered entities make 'reasonable accommodations' to enable 'meaningful access' to such services as may be provided, whether such services are adequate or not." Id.

The trial court in the present case ruled that "[a]side from an allegation that he has no access to contact sports, an activity in which he does not seek to participate, the plaintiff does not allege that he is prevented from participating in any other available activity offered by the defendants." Furthermore, the court found that "the [plaintiff's] complaint fails to properly allege that the plaintiff was denied an opportunity to participate in or benefit from the defendants' services, programs or activities as a result of his disability." We agree.

The plaintiff's ADA and Rehabilitation Act claims contain two stumbling blocks. Firstly, the plaintiff's alleged request is not a reasonable accommodation for access to the programs he cannot participate in because of his disability. The plaintiff is not requesting, for example, a special apparatus so as to participate in a contact sport activity. Instead, the plaintiff is requesting a completely different benefit, namely, the possession of a musical instrument in his cell. The plaintiff's requested accommodation is not to help him achieve access to an activity in which disabled inmates cannot participate; rather, it is a substantively different service. The plaintiff's access to the activities available to the nondisabled general population would not be facilitated by his possession of the keyboard. The defendants' denial of the plaintiff's request is not a denial of a reasonable accommodation to enable meaningful access to the activities in which the plaintiff cannot engage.

The plaintiff's second stumbling block is his failure to allege that he is denied access to these activities *by*

*the defendants.* "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination *by any such entity.*" (Emphasis added.) 42 U.S.C. § 12132. The plaintiff alleges in his complaint, however, that the "[p]laintiff's disabilities prohibit his equal access to the multitude of recreational activities provided to [the] non-disabled general population inmates . . . ." The plaintiff is not alleging that his access to these activities was blocked by the defendants, but, rather, that his access was prevented by his disabilities. The plaintiff's complaint, therefore, lacks sufficient factual allegations to satisfy all of the elements both under the ADA and the Rehabilitation Act. Therefore, the court did not err in striking the plaintiff's claims for declaratory and injunctive relief for failing to plead sufficient facts under those statutes.

### III

On appeal, the plaintiff claims that the court erred in striking his constitutional equal protection claims for failing to plead sufficient facts. The plaintiff's complaint alleges violations of the equal protection clause of the fourteenth amendment to the United States constitution and article first, § 20, of the Connecticut constitution, as amended by articles five and twenty-one of the amendments. The equal protection clause of the Connecticut constitution, article first, § 20, as amended by articles five and twenty-one of the amendments, provides: "No person shall be denied the equal protection of the law nor be subjected to segregation or discrimination in the exercise or enjoyment of his or her civil or political rights because of religion, race, color, ancestry, national origin, sex or physical or mental disability." "[F]ederal law, whether based upon statute or constitution, establishes a minimum national standard for the exercise of individual rights and does not inhibit state

governments from affording higher levels of protection for such rights." (Internal quotation marks omitted.) *Bozrah* v. *Chmurynski*, 303 Conn. 676, 683 n.4, 36 A.3d 210 (2012). Although the plaintiff in the present case is representing himself, he is not a neophyte in litigating against the state. See *Mercer* v. *Blanchette*, 133 Conn. App. 84, 33 A.3d 889 (2012); *Mercer* v. *Cosley*, 110 Conn. App. 283, 955 A.2d 550 (2008); *Mercer* v. *Strange*, supra, 96 Conn. App. 123; *Mercer* v. *Rodriquez*, 83 Conn. App. 251, 849 A.2d 886 (2004); *Mercer* v. *Commissioner of Correction*, 49 Conn. App. 819, 717 A.2d 763, cert. denied, 247 Conn. 920, 722 A.2d 810 (1998). Despite his extensive litigation experience, nowhere in his appellate brief does he claim that the Connecticut constitution affords greater rights under its equal protection clause than does our United States constitution, nor does he separately analyze his state constitutional claim under the six factors our Supreme Court has mandated as necessary for appellate review of state constitutional claims under *State* v. *Geisler*, 222 Conn. 672, 684–85, 610 A.2d 1225 (1992). As in *Bozrah*, we, therefore, do not decide nor review the plaintiff's separate state constitutional claim and limit our review to the federal constitutional claim that he has asserted and briefed.

"The [e]qual [p]rotection [c]lause of the [f]ourteenth [a]mendment to the United States [c]onstitution is essentially a direction that all persons similarly situated should be treated alike. . . . A violation of equal protection by selective [treatment] arises if: (1) the person, compared with others similarly situated, was selectively treated; and (2) . . . such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person. . . .

"Although the prototypical equal protection claim involves discrimination against people based on their

membership in a vulnerable class . . . the equal protection guarantee also extends to individuals who allege no specific class membership but are nonetheless subjected to invidious discrimination at the hands of government officials. . . . The [United States] Supreme Court [has] affirmed the validity of such class of one claims [when] the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." (Citation omitted; internal quotation marks omitted.) *Brooks* v. *Sweeney*, supra, 299 Conn. 218–19; see *Willowbrook* v. *Olech*, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000) (affirming validity of such class of one claims). In addition to showing such disparate treatment, the plaintiff "also must show that the disparity in treatment cannot survive the appropriate level of scrutiny which, in the prison setting, means that he must demonstrate that his treatment was not 'reasonably related to [any] legitimate penological interests.' " *Phillips* v. *Girdich*, 408 F.3d 124, 129 (2d Cir. 2005).

"[T]he analytical predicate [of an equal protection claim] is a determination of who are the persons . . . similarly situated. . . . [T]he requirement imposed [on] [p]laintiffs claiming an equal protection violation [is that they] identify and relate specific instances [in which] persons situated similarly in all *relevant* aspects were treated differently . . . ." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Brooks* v. *Sweeney*, supra, 299 Conn. 219.

In the plaintiff's substitute complaint, he alleges "that he is being treated differently from other inmates as a result of his disability. Reasonable accommodations in the area of recreational activities have been granted to other inmates. The plaintiff is being treated differently than others similarly situated." The trial court concluded that the plaintiff's equal protection claim was legally insufficient because the plaintiff failed to allege

any facts to support his claim. Specifically, there is no allegation that any other inmate was provided the type of accommodation that the plaintiff requested and that the failure subsequently to provide the plaintiff with such requested accommodation was because of his disability status. We agree.

"A motion to strike is properly granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged." *Novametrix Medical Systems, Inc.* v. *BOC Group, Inc.*, supra, 224 Conn. 215. Under either the prototypical equal protection or class of one analysis, the plaintiff's substitute complaint must identify and relate specific factual instances in which persons similarly situated were treated differently. In his complaint, the plaintiff presents only the conclusory allegation that he is being treated differently because of his disability. The plaintiff claims that other inmates have been granted reasonable accommodations, but again fails to identify any specific individual or instance. Such conclusory statements without factual support are not enough to allow the plaintiff's equal protection claim to survive the defendants' motion to strike. The trial court did not err in striking the plaintiff's equal protection claim on the basis of his failure to plead sufficient facts, or in rendering judgment for the defendants on the stricken complaint.

The judgment is affirmed.

In this opinion the other judges concurred.