******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# SEAN MICHEL *v.* CITY OF HARTFORD
## (AC 45563)

Elgo, Prescott and Keller, Js.

*Syllabus*

Pursuant to statute ((Rev. to 2019) § 31-51q), "[a]ny employer . . . who subjects any employee to discipline or discharge on account of the exercise by such employee of rights guaranteed by the first amendment to the United States Constitution or section 3, 4 or 14 of article first of the Constitution of the state, provided such activity does not substantially or materially interfere with the employee's bona fide job performance or the working relationship between the employee and the employer, shall be liable to such employee for damages caused by such discipline or discharge . . . ."

The plaintiff appealed to this court from the judgment rendered for the defendant city on his claims for free speech retaliation under § 31-51q and the federal statute (42 U.S.C. § 1983). The plaintiff, an employee of the defendant's police department, reported to his commander that C, a fellow employee, had complained to him that he was being subjected to discriminatory treatment on the basis of his race. The commander ordered the plaintiff not to get involved and assured the plaintiff that he would take care of C's complaint. C subsequently told the plaintiff that the commander stated that he was unable to help with C's complaint. C, on the advice of the plaintiff, reported his complaint to the police union and to the department's internal affairs division and openly acknowledged that the plaintiff had suggested that he do so. C also filed a complaint with the Commission on Human Rights and Opportunities (CHRO) alleging that he was the subject of unlawful racial discrimination. The plaintiff supported C's filing of the complaint and attempted to protect him from further discrimination and retaliation within the department. Subsequently, the plaintiff was, inter alia, removed from certain supervisory positions, removed from certain assignments that would result in the receipt of overtime compensation, and assigned to allegedly inconvenient shifts after he returned from paternity leave. The plaintiff testified in support of C at a deposition in connection with C's CHRO complaint, and, after providing such testimony, the plaintiff was not selected to become the new commander of his unit. The plaintiff later testified favorably for C and against the defendant at a second deposition. Thereafter, the plaintiff was, inter alia, assigned to unfavorable shifts and was not selected for certain new positions. The trial court granted the defendant's motion to strike the plaintiff's operative complaint on the ground that the plaintiff had not sufficiently pleaded the claims of retaliation. *Held*:

1. The plaintiff could not prevail on his claim that the trial court improperly granted the defendant's motion to strike with regard to his claim under § 1983; the plaintiff failed to sufficiently plead facts that, if proven, would establish retaliation pursuant to an official policy, practice or custom, such that the defendant, as a municipality, could be held liable pursuant to § 1983 for the actions of its employees, as the plaintiff acknowledged that the conduct at issue did not involve a formal or official policy, he failed to allege any facts to demonstrate that the officers who engaged in the alleged retaliatory conduct were responsible for establishing final policy with respect to the subject matter in question, in order to be characterized as municipal policymakers, the pattern of misconduct alleged by the plaintiff was directed only at the plaintiff himself, and the plaintiff did not allege other constitutional violations, or that the officers' conduct was directed at anyone else, in order to establish that the defendant had a custom or practice of infringing on constitutional rights.

2. The trial court improperly granted the defendant's motion to strike the counts of the operative complaint asserting claims of retaliation in violation of § 31-51q:

a. The defendant's argument that the operative complaint was devoid of any allegations as to what the plaintiff "actually said" in his deposition testimony and, therefore, that the allegations were insufficient to establish that his speech was on a matter of public concern was unavailing: the allegations set forth in the operative complaint, when construed in the manner most favorable to sustaining its legal sufficiency, were sufficient to demonstrate that the plaintiff was not making a statement pursuant to his official duties and, although testifying in criminal proceedings and certain civil proceedings may have been a part of the tasks that the plaintiff was paid to perform, there were no factual allegations to indicate that providing deposition testimony in the context of a fellow employee's discrimination proceeding was part of what the plaintiff, as a police officer, was employed to do; moreover, the allegations set forth in the operative complaint were sufficient to establish that the plaintiff's speech was on the topic of racial discrimination against a fellow employee, which is a matter of public concern, and the allegations in the operative complaint, taken together, necessarily implied that the plaintiff's deposition testimony supported C's discrimination claim; furthermore, although the plaintiff failed to include allegations concerning the precise content of his testimony, it could reasonably be inferred from the allegations set forth in the operative complaint that the plaintiff in the present case was speaking out against discrimination in his testimony or that his testimony regarded the existence of discrimination in the workplace and, accordingly, the trial court improperly determined that the plaintiff failed to sufficiently allege that his speech addressed a matter of public concern.

b. The trial court erroneously concluded that the plaintiff was required to plead that his speech did not substantially or materially interfere with his job performance or the working relationship between him and his employer pursuant to § 31-51q; although the issue of whether a plaintiff making a § 31-51q claim must affirmatively plead noninterference was an open question that neither this court nor the Supreme Court had previously addressed, this court concluded that a plaintiff making a claim pursuant to § 31-51q does not have an affirmative burden to plead noninterference but, rather, a defendant may raise the issue of interference in a special defense.

Argued October 11, 2023—officially released June 11, 2024

*Procedural History*

Action to recover damages for, inter alia, retaliation, and for other relief, brought to the Superior Court in the judicial district of Hartford, where the court, *Sheridan, J.*, granted in part the defendant's motion to strike; thereafter, the plaintiff withdrew the remaining count of his complaint; subsequently, the court, *Sheridan, J.*, granted the defendant's motion for judgment and rendered judgment thereon, from which the plaintiff appealed to this court. *Reversed in part*; *further proceedings*.

*Christopher T. DeMatteo*, for the appellant (plaintiff).

*Nathalie Feola-Guerrieri*, senior assistant corporation counsel, for the appellee (defendant).

*Opinion*

KELLER, J. The plaintiff, Sean Michel, appeals from the judgment rendered in favor of the defendant, the city of Hartford, following the partial granting of its motion to strike and the subsequent withdrawal of the remaining count set forth in the plaintiff's operative complaint. On appeal, the plaintiff contends that the court improperly granted the defendant's motion to strike as to counts one, two, and three of that complaint, which alleged free speech retaliation claims pursuant to

General Statutes (Rev. to 2019) § 31-51q[1] and 42 U.S.C. § 1983. We agree with the plaintiff as to counts two and three of the operative complaint, which set forth the plaintiff's claims under § 31-51q, and, accordingly, reverse in part the judgment of the trial court.

We begin by setting forth the facts, as alleged in the plaintiff's operative complaint,[2] and the procedural history of this case. The plaintiff is employed by the Hartford Police Department (department). In February, 2016, a fellow employee, Detective Samuel Cruz, complained to the plaintiff that he was being subjected to discriminatory treatment by his supervisor, Sergeant Shawn St. John, on the basis of his race. Cruz told the plaintiff that St. John was declining to enter Cruz' overtime into the department's payroll system.

The plaintiff immediately reported Cruz' complaint to Lieutenant Brandon O'Brien, the commander of the vice, intelligence, and narcotics unit of the department, in which the plaintiff was a sergeant at that time. O'Brien ordered the plaintiff not to get involved and assured the plaintiff that he would take care of Cruz' complaint. Cruz subsequently told the plaintiff that O'Brien stated that he was unable to help with his complaint. The plaintiff told Cruz that O'Brien's response was "unacceptable" and suggested that Cruz contact their union or the department's investigative services bureau for further assistance. Cruz followed the plaintiff's advice and reported his complaint to the union and the department's internal affairs division, and he openly acknowledged that the plaintiff had suggested that he do so.

In September, 2017, Cruz filed a complaint with the Commission on Human Rights and Opportunities (CHRO)

---

[1] Hereinafter, all references to § 31-51q in this opinion are to the 2019 revision of the statute.

[2] "[I]n ruling on a motion to strike, we take the facts alleged in the complaint as true." (Internal quotation marks omitted.) *Ring* v. *Litchfield Bancorp*, 174 Conn. App. 813, 815, 167 A.3d 462 (2017).

alleging that he was the subject of unlawful racial discrimination. The plaintiff supported Cruz' filing of the complaint and "attempted to protect him" from further discrimination and retaliation within the department.

Subsequently, the plaintiff was, among other things, removed from certain supervisory positions; removed from certain assignments that would result in the receipt of overtime compensation; assigned to "the most inconvenient shift possible for his family needs" after he returned from paternity leave, despite a previous agreement that he could work a shift that would enable him to assist his wife with childcare; and, even though he was promoted from the rank of sergeant to lieutenant, assigned to "a punishment position in patrol, which did not carry the same benefits as other lieutenant positions . . . ."

On October 23, 2018, the plaintiff testified at a deposition in connection with Cruz' CHRO complaint, and his testimony supported Cruz' allegations. When the deposition ended, an attorney for the defendant apologized to the plaintiff for the retaliation he already had endured and encouraged him to continue telling the truth. After providing this testimony, the plaintiff was not selected to become the new commander of the vice, intelligence, and narcotics unit, despite "his experience and his background [making] him indisputably the best candidate for the position."

On December 20, 2019, the plaintiff testified at a second deposition on behalf of Cruz,[3] "testifying favorably for [Cruz] and against the defendant." Thereafter,

---

[3] The trial court's memorandum of decision states that, on October 23, 2018, "the plaintiff testified on behalf of [Cruz] at a fact-finding hearing before the [CHRO]" and then, on December 20, 2019, the plaintiff provided deposition testimony in connection with a federal discrimination lawsuit that Cruz had filed. The court appears to have obtained these facts from the plaintiff's opposition to the defendant's motion to strike. The plaintiff's operative complaint, however, alleges that the plaintiff's October 23, 2018 testimony was provided in the context of a deposition for Cruz' CHRO complaint, not at a fact-finding hearing, and that his December 20, 2019

the plaintiff was, among other things, assigned to unfavorable shifts that resulted in significant hardship for his family; was not selected for certain new positions, including one that would have accommodated his family's needs; and, when he followed his doctor's advice to take a stress leave and to obtain treatment, was threatened with discipline.

In October, 2020, the plaintiff commenced the present action against the defendant. On October 13, 2021, the plaintiff filed the operative complaint[4] consisting of six counts: retaliation in violation of § 1983 for the exercise of his rights guaranteed by the first amendment to the United States constitution (count one); retaliation in violation of § 31-51q for the exercise of his first amendment rights (count two); retaliation in violation of § 31-51q for the exercise of his rights guaranteed by article first, §§ 4 and 5, of the Connecticut constitution (count three); breach of contract (count four); breach of the implied covenant of good faith and fair dealing (count five); and intentional infliction of emotional distress

testimony was provided at a second deposition, without specifying that the deposition testimony was provided in connection with a separate federal discrimination action that Cruz had filed. On appeal, the parties do not address these discrepancies. For purposes of reviewing the decision on the motion to strike, we focus our analysis on the allegations set forth in the plaintiff's complaint. See *A.C. Consulting, LLC* v. *Alexion Pharmaceuticals, Inc.*, 194 Conn. App. 316, 325, 220 A.3d 890 (2019) (purpose of motion to strike is to challenge legal sufficiency of allegations in complaint); see also Practice Book § 10-39 (a).

[4] In the original complaint, the plaintiff alleged retaliation in violation of § 31-51q for the exercise of his rights guaranteed by article first, §§ 3, 4, and 14, of the Connecticut constitution. The defendant filed a request to revise the original complaint, requesting that the plaintiff set forth the particular statements that he alleged he made that were protected under the state constitution. The plaintiff filed an objection to the request to revise, arguing that the information requested by the defendant should be obtained through discovery, and the court sustained that objection. The defendant subsequently filed a motion to strike the original complaint, which the court marked off because the plaintiff indicated that he would file an amended complaint.

(count six). All counts related to his allegations that he had been subjected to retaliation for "opposing racial discrimination" and providing truthful testimony in Cruz' legal matters.

On November 12, 2021, the defendant filed a motion to strike on the ground that the plaintiff had not sufficiently pleaded the claims set forth in his operative complaint[5] and argued that the plaintiff's claim for punitive damages failed because the defendant, as a matter of law, could not be liable for such damages. The plaintiff filed a memorandum in opposition to the defendant's motion to strike on January 18, 2022. On that same date, the trial court, *Sheridan, J.*, held a hearing on the motion. At the beginning of the hearing, the plaintiff's counsel conceded, as he had in his memorandum, that count six and the part of count three relying on article first, § 5, of the Connecticut constitution should be stricken. Nevertheless, he maintained that the plaintiff adequately pleaded facts sufficient to state causes of action in the remaining counts, including the part of count three relying on article first, § 4, of the Connecticut constitution, and argued that § 31-51q expressly authorizes punitive damages.

On May 17, 2022, the court issued a memorandum of decision granting the motion to strike as to counts one, two, three, four, and five but denying the motion to

[5] The defendant also argued that the § 1983 claim set forth in count one of the operative complaint was barred by the statute of limitations. The court did not resolve the motion to strike as to count one on this ground, reasoning that the issue of the statute of limitations typically must be pleaded as a special defense, rather than by a motion to strike. See *Greco* v. *United Technologies Corp.*, 277 Conn. 337, 344 n.12, 890 A.2d 1269 (2006) ("[O]rdinarily, [a] claim that an action is barred by the lapse of the statute of limitations must be pleaded as a special defense, not raised by a motion to strike. . . . This is because a motion to strike challenges only the legal sufficiency of the complaint and might . . . deprive a plaintiff of an opportunity to plead matters in avoidance of the statute of limitations defense." (Citations omitted; internal quotation marks omitted.)).

strike as to the prayer for relief regarding punitive damages. The court took no action as to count six given the plaintiff's representation in his memorandum in opposition to the motion to strike that he would withdraw that count.

As to count one of the plaintiff's complaint, alleging a violation of § 1983,[6] the court concluded that the plaintiff failed to allege sufficient facts to establish that (1) the defendant's policies, practices, or customs led to a violation of his constitutional rights, as required for municipal liability, and (2) his deposition testimony was speech on a matter of public concern, as required for protection under the first amendment.[7] As to counts two and three of the plaintiff's complaint, alleging violations of § 31-51q,[8] the court concluded that the plaintiff

[6] "A first amendment retaliation claim under § 1983 requires that a [plaintiff] establish three elements: (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." (Internal quotation marks omitted.) *Jolley* v. *Vinton*, 196 Conn. App. 379, 384, 229 A.3d 1198 (2020). In addition, "[p]laintiffs who seek to impose liability on local governments under § 1983 must prove that action pursuant to official municipal policy caused their injury." (Internal quotation marks omitted.) *Edgewood Street Garden Apartments, LLC* v. *Hartford*, 163 Conn. App. 219, 231, 135 A.3d 54, cert. denied, 321 Conn. 903, 136 A.3d 642 (2016).

[7] In its memorandum of decision, the court set forth two ways in which the plaintiff failed to sufficiently allege that his speech was constitutionally protected under the federal constitution. The court first explained that, although the plaintiff relied on *Lane* v. *Franks*, 573 U.S. 228, 134 S. Ct. 2369, 189 L. Ed. 2d 312 (2014), which held that the first amendment protects a public employee who provides truthful sworn testimony, compelled by subpoena, outside the scope of his ordinary job responsibilities; id., 238; the plaintiff failed to allege that his deposition testimony was compelled by subpoena. The court also reasoned that the plaintiff failed to allege that he provided testimony on a matter of public concern rather than the personal grievance of another employee, such as evidence necessary for the administration of justice or a complaint of discrimination connected to a broader policy or practice of systemic discrimination.

[8] General Statutes (Rev. to 2019) § 31-51q provides in relevant part: "Any employer . . . who subjects any employee to discipline or discharge on account of the exercise by such employee of rights guaranteed by the first amendment to the United States Constitution or section 3, 4 or 14 of article

failed to allege sufficient facts to establish that (1) his deposition testimony was speech on a matter of public concern, as required for protection under both the federal and state constitutions,[9] and (2) his speech did not substantially or materially interfere with his job performance or the working relationship between him and his employer.

The plaintiff did not replead, and the defendant filed a motion for judgment on June 6, 2022. The following day, on June 7, 2022, while the motion for judgment was still pending, the plaintiff filed an appeal from the court's May 17, 2022 decision granting the defendant's motion to strike. This court subsequently ordered the parties to file memoranda addressing whether the original appeal should be dismissed for lack of jurisdiction because judgment had not been rendered on the stricken counts of the operative complaint and because count six of the complaint, which the plaintiff had represented that he would withdraw, had not been withdrawn and therefore remained pending. On August 9, 2022, the plaintiff filed with the trial court a withdrawal of count six of the operative complaint and, on August 17, 2022, the trial court granted the defendant's motion for judgment. This amended appeal followed.[10]

first of the Constitution of the state, provided such activity does not substantially or materially interfere with the employee's bona fide job performance or the working relationship between the employee and the employer, shall be liable to such employee for damages caused by such discipline or discharge, including punitive damages, and for reasonable attorney's fees as part of the costs of any such action for damages. . . .''

[9] In the context of the plaintiff's § 31-51q claim under the federal constitution, as set forth in count two, the court explained: "As discussed in connection with the plaintiff's § 1983 claim in count one, the plaintiff's speech did not address a matter of public concern, but rather was intended to support and corroborate the personal grievances of another employee." See footnote 7 of this opinion. The court ruled that the plaintiff's § 31-51q claim under the state constitution, as set forth in count three, failed for the same reason.

[10] This court subsequently denied a motion to dismiss the original appeal that it had sua sponte filed on the same date as its order for supplemental memoranda. This court ordered that "the appeal as amended may proceed."

At the outset, we note the standard of review and legal principles that apply to the plaintiff's claims. "A motion to strike shall be used whenever any party wishes to contest . . . the legal sufficiency of the allegations of any complaint . . . or of any one or more counts thereof, to state a claim upon which relief can be granted . . . ." Practice Book § 10-39 (a). "Appellate review of a trial court's decision to grant a motion to strike is plenary. . . . We take the facts to be those alleged in the complaint that has been stricken and we construe the complaint in the manner most favorable to sustaining its legal sufficiency. . . . It is fundamental that in determining the sufficiency of a complaint challenged by a defendant's motion to strike, all well-pleaded facts and those facts necessarily implied from the allegations are taken as admitted." (Citation omitted; internal quotation marks omitted.) *A.C. Consulting, LLC* v. *Alexion Pharmaceuticals, Inc.*, 194 Conn. App. 316, 325, 220 A.3d 890 (2019); see also *Doe* v. *Cochran*, 332 Conn. 325, 333, 210 A.3d 469 (2019) ("we note that [w]hat is necessarily implied [in an allegation] need not be expressly alleged" (internal quotation marks omitted)). "Indeed, pleadings must be construed broadly and realistically, rather than narrowly and technically." (Internal quotation marks omitted.) *Sepega* v. *DeLaura*, 326 Conn. 788, 791, 167 A.3d 916 (2017). We now address the plaintiff's claims in turn.

I

First, the plaintiff claims that the court improperly granted the defendant's motion to strike count one of his operative complaint alleging retaliation in violation of § 1983 for the exercise of his rights guaranteed by the first amendment to the federal constitution. Specifically, he contends that, contrary to the court's conclusion, he adequately pleaded facts to establish that the

defendant's policies, practices, or customs led to a violation of his constitutional rights, as required for municipal liability. We are not persuaded.[11]

"A municipality or other local government may be liable under [§ 1983] if the governmental body itself subjects a person to a deprivation of rights or causes a person to be subjected to such deprivation. See *Monell* v. *New York City Dept. of Social* [*Services*], 436 U.S. 658, 692 [98 S. Ct. 2018, 56 L. Ed. 2d 611] (1978) [quoting 42 U.S.C. § 1983]. But, under § 1983, local governments are responsible only for their own illegal acts. . . . They are not vicariously liable under § 1983 for their employees' actions. . . . Plaintiffs who seek to impose liability on local governments under § 1983 must prove that action pursuant to official municipal policy caused their injury. . . .

"[I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the moving force behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights. Where a plaintiff claims that a particular municipal action itself violates federal law, or directs an employee to do so, resolving these issues of fault and causation is straightforward. . . . Where [however] a plaintiff claims that the municipality

---

[11] The plaintiff also contends that the court improperly concluded that he failed to sufficiently allege that his speech was on a matter of public concern, as required for protection under the first amendment. As set forth in part II of this opinion, we agree with that contention. Nevertheless, the plaintiff's failure to plead sufficient facts to establish municipal liability is fatal to his § 1983 claim.

Moreover, in light of our conclusion as to municipal liability, we need not reach the defendant's alternative ground for affirmance that the plaintiff's § 1983 claim is time barred by the statute of limitations.

has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." (Citation omitted; internal quotation marks omitted.) *Edgewood Street Garden Apartments, LLC* v. *Hartford*, 163 Conn. App. 219, 231–32, 135 A.3d 54, cert. denied, 321 Conn. 903, 136 A.3d 642 (2016).

In the present case, the plaintiff failed to sufficiently plead facts that, if proven, would establish retaliation pursuant to an official policy, practice or custom, such that the defendant, as a municipality, could be held liable pursuant to § 1983 for the actions of its employees. The plaintiff acknowledges that the conduct at issue does not involve a formal or official policy. Nevertheless, he contends that he alleged a pattern of adverse employment actions taken against him by his superiors, who were "effectively the policymakers of the department," which was sufficient to constitute a policy or custom required for municipal liability. "[M]unicipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Pembaur* v. *Cincinnati*, 475 U.S. 469, 480, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986). In addition, "*Monell*'s policy or custom requirement is satisfied where a local government is faced with a pattern of misconduct and does nothing, compelling the conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions. . . . Such a pattern, if sufficiently persistent or widespread as to acquire the force of law, may constitute a policy or custom within the meaning of *Monell*." (Citations omitted.) *Reynolds* v. *Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007).

The plaintiff failed to allege any facts to demonstrate that the officers who engaged in the alleged retaliatory conduct were "responsible for establishing final policy with respect to the subject matter in question," in order

to be characterized as municipal policymakers. *Pembaur* v. *Cincinnati*, supra, 475 U.S. 483–84. Moreover, the "pattern" of misconduct alleged by the plaintiff was directed only at the plaintiff himself. The plaintiff did not allege other constitutional violations, or that the officers' conduct was directed at anyone else, in order to establish that the defendant had a custom or practice of infringing on constitutional rights. See *Reynolds* v. *Giuliani*, supra, 506 F.3d 192 (misconduct by subordinate municipal employee other than policymaker must be "sufficiently persistent or widespread" as to indicate pattern "acquir[ing] the force of law"); see also *St. Louis* v. *Praprotnik*, 485 U.S. 112, 128, 108 S. Ct. 915, 99 L. Ed. 2d 107 (1988) (plaintiff's failure to allege that relevant conduct "was ever directed against anyone other than himself" supported conclusion that city could not be held liable under *Monell*); *Dean* v. *Wexford Health Sources, Inc.*, 18 F.4th 214, 240 (7th Cir. 2021) ("[c]onsistent with the Supreme Court's guidance, we have repeatedly rejected *Monell* claims that rest on the plaintiff's individualized experience without evidence of other constitutional violations"); *Jones* v. *East Haven*, 691 F.3d 72, 82 (2d Cir. 2012) (there must be "sufficient instances of tolerant awareness" by supervisors of abusive conduct to support inference that they had policy, custom or usage of acquiescence in such abuse), cert. denied, 571 U.S. 940, 134 S. Ct. 125, 187 L. Ed. 2d 255 (2013). Accordingly, the plaintiff failed to sufficiently allege an official policy, practice or custom as required for municipal liability under § 1983. Therefore, we conclude that the plaintiff's § 1983 claim was properly stricken.

II

The plaintiff also claims that the court improperly granted the defendant's motion to strike counts two and three of his operative complaint asserting claims of retaliation in violation of § 31-51q for the exercise

of his free speech rights pursuant to the first amendment to the United States constitution and article first, § 4, of the Connecticut constitution. Specifically, he contends that (1) he sufficiently pleaded facts that, if proven, would establish that his deposition testimony was constitutionally protected as speech on a matter of public concern, and (2) he was not required to allege facts to establish that his speech did not substantially or materially interfere with his job performance or the working relationship between him and his employer. We agree.

A

The plaintiff first contends that the allegations in the operative complaint were sufficient to establish that he provided testimony in support of a fellow employee's race discrimination claim, which, he argues, is speech on a matter of public concern. The defendant responds that the operative complaint was devoid of any allegations as to what the plaintiff "actually said" in his deposition testimony and, therefore, the allegations were insufficient to establish speech on a matter of public concern. We agree with the plaintiff.

"[Section] 31-51q provides a cause of action for damages for an employee who has been disciplined or discharged on account of the exercise by such employee of various constitutional rights including the freedom of speech." (Footnote omitted.) *D'Angelo* v. *McGoldrick*, 239 Conn. 356, 357, 685 A.2d 319 (1996). Specifically, General Statutes (Rev. to 2019) § 31-51q provides in relevant part: "Any employer . . . who subjects any employee to discipline or discharge on account of the exercise by such employee of rights guaranteed by the first amendment to the United States Constitution or section 3, 4 or 14 of article first of the Constitution of the state, provided such activity does not substantially or materially interfere with the employee's bona fide

job performance or the working relationship between the employee and the employer, shall be liable to such employee for damages caused by such discipline or discharge, including punitive damages, and for reasonable attorney's fees as part of the costs of any such action for damages. . . .''

To determine whether the plaintiff sufficiently alleged that his deposition testimony was constitutionally protected, which is "[a] clear prerequisite to the application of § 31-51q"; *Schumann* v. *Dianon Systems, Inc.*, 304 Conn. 585, 600, 43 A.3d 111 (2012); we first turn to the applicable constitutional principles governing the protected status of employee speech under the federal constitution. In the public employment setting, "employees must generally by necessity . . . accept certain limitations on their [f]irst [a]mendment freedoms because, as government insiders, their speech can contravene governmental policies or impair the proper performance of governmental functions. . . . Still, a public employee does not relinquish all [f]irst [a]mendment rights otherwise enjoyed by citizens just by reason of his or her employment." (Citations omitted; internal quotation marks omitted.) *Heim* v. *Daniel*, 81 F.4th 212, 223 (2d Cir. 2023); see also *Schumann* v. *Dianon Systems, Inc.*, supra, 601 ("it is well established that a . . . government may not compel individuals to relinquish their first amendment rights as a condition to obtaining government employment" (internal quotation marks omitted)).

"In *Pickering* v. *Board of Education*, [391 U.S. 563, 568, 88 S. Ct. 1731, 20 L. Ed. 2d 811 (1968)] . . . the [United States Supreme Court] . . . set forth a general principle governing the constitutionality of government restrictions on the speech of its employees: in evaluating the constitutionality of government restrictions on an employee's speech, a court must arrive at a balance between the interests of the [employee], as a citizen,

in commenting upon matters of public concern and the interest of the [s]tate, as an employer, in promoting the efficiency of the public services it performs . . . .

"In *Connick* v. *Myers,* [461 U.S. 138, 150, 103 S. Ct. 1684, 75 L. Ed. 2d 708 (1983)] the court added a modification to the general balancing test promulgated in *Pickering.* Under *Connick,* if a government employee's speech cannot be fairly characterized as constituting speech on a matter of public concern, it is unnecessary . . . to scrutinize the reasons for [his or] her discharge. . . . The court reasoned that if an employee's speech addresses matters of exclusively private concern, the government interest in latitude [to manage] their offices, without intrusive oversight by the judiciary . . . would outweigh the first amendment interests in the speech, absent the most unusual circumstances . . . ." (Citation omitted; internal quotation marks omitted.) *Schumann* v. *Dianon Systems, Inc.,* supra, 304 Conn. 601–602.

Subsequently, in *Garcetti* v. *Ceballos,* 547 U.S. 410, 126 S. Ct. 1951, 164 L. Ed. 2d 689 (2006), the court emphasized that "[u]nderlying [its] cases has been the premise that while the [f]irst [a]mendment invests public employees with certain rights, it does not empower them to 'constitutionalize the employee grievance.' " Id., 420. Thus, the court concluded that, "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for [f]irst [a]mendment purposes, and the [c]onstitution does not insulate their communications from employer discipline." Id., 421. Our Supreme Court has explained that "*Garcetti* adds a threshold layer of analysis, requiring courts to first determine whether an employee is speaking pursuant to his official duties before turning to the remainder of the first amendment analysis set forth in *Pickering* and *Connick.*" *Schumann* v. *Dianon Systems, Inc.,* supra, 304 Conn. 604.

Our state constitution, however, provides broader protection than its federal counterpart in this context. See *Trusz* v. *UBS Realty Investors, LLC*, 319 Conn. 175, 191–210, 123 A.3d 1212 (2015). In *Trusz*, our Supreme Court concluded that the state constitution "incorporates a slightly modified form of the *Pickering/Connick* test"; id., 191; and that the *Garcetti* standard does not apply to claims arising under the state constitution. Id., 210. The court determined that "[the] modified *Pickering/Connick* balancing test [set forth in Justice Souter's dissenting opinion in *Garcetti*], which recognizes both the state constitutional principle that speech on *all* subjects should be protected to the maximum extent possible and the important interests of an employer in controlling its own message and preserving workplace discipline, harmony and efficiency, provides the proper test for determining the scope of a public employee's rights under the free speech provisions of the state constitution when the employee is speaking pursuant to his or her official duties." (Emphasis in original.) Id. Under this standard, "if an employee's job related speech reflects a mere policy difference with the employer, it is not protected. It is only when the employee's speech is on a matter of public concern and implicates an employer's official dishonesty . . . other serious wrongdoing, or threats to health and safety . . . that the speech trumps the employer's right to control its own employees and policies." (Citation omitted; internal quotation marks omitted.) Id., 212.

In the present case, we initially note that the allegations set forth in the operative complaint, when construed in the manner most favorable to sustaining its legal sufficiency, were sufficient to demonstrate that the plaintiff was not making a statement pursuant to his official duties. Accordingly, the differing legal standards set forth in *Garcetti* and *Trusz* are not implicated in the present case. See *Garcetti* v. *Ceballos*, supra, 547

U.S. 421 (when public employees "make statements pursuant to their official duties," employees are not "speaking as citizens" as required for protection under first amendment); *Trusz* v. *UBS Realty Investors, LLC*, supra, 319 Conn. 210 (modified *Pickering/Connick* test applies under speech provisions of Connecticut constitution "when the employee is speaking pursuant to his or her official duties").

The defendant suggests, to the contrary, that the plaintiff failed to allege that he was testifying outside the scope of his ordinary job responsibilities, and, therefore, (1) the allegations were legally insufficient to demonstrate that the plaintiff was "speak[ing] as a citizen" pursuant to *Garcetti* v. *Ceballos*, supra, 547 U.S. 423, and (2) the plaintiff was required to further allege that his testimony "implicate[d] [his] employer's official dishonesty . . . other serious wrongdoing, or threats to health and safety" pursuant to *Trusz* v. *UBS Realty Investors, LLC*, supra, 319 Conn. 212, which he also failed to do. The defendant specifically contends that "[i]t is reasonable to infer from the pleadings that as a police lieutenant, a routine and ordinary part of [the plaintiff's] job responsibilities include providing truthful sworn testimony in judicial proceedings." We disagree.

Although testifying in criminal proceedings and certain civil proceedings may be a part of the tasks that the plaintiff was paid to perform, there are no factual allegations to indicate that providing deposition testimony *in the context of a fellow employee's discrimination proceeding* was part of what the plaintiff, as a police officer, was employed to do. See *Garcetti* v. *Ceballos*, supra, 547 U.S. 421–22. Indeed, even if the plaintiff's allegations suggest that his speech related to information he had obtained during the course of his employment, the concerns addressed in *Garcetti* and *Trusz* do not arise. See *Trusz* v. *UBS Realty Investors*,

*LLC*, supra, 319 Conn. 212 ("even under *Garcetti*, an employee's speech outside the workplace about the employee's job related duties . . . is protected, as long as the speech involves a matter of public concern" (emphasis omitted)); see also *Lane* v. *Franks*, 573 U.S. 228, 238, 134 S. Ct. 2369, 189 L. Ed. 2d 312 (2014) ("Truthful testimony under oath by a public employee outside the scope of his ordinary job duties is speech as a citizen for [f]irst [a]mendment purposes. That is so even when the testimony relates to his public employment or concerns information learned during that employment.").[12]

Nevertheless, as set forth previously, the plaintiff's speech must have addressed a matter of public concern to be entitled to protection under both the federal and state constitutions. See *Trusz* v. *UBS Realty Investors, LLC*, supra, 319 Conn. 212; *Schumann* v. *Dianon Systems, Inc.*, supra, 304 Conn. 602. "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick* v. *Myers*, supra, 461 U.S. 147–48. "An employee's speech addresses a matter of public concern when the speech can be fairly considered as relating to any matter of political, social, or other concern to the community . . . ." (Internal quotation marks omitted.) *Schumann* v. *Dianon Systems, Inc.*, supra, 602.

We conclude that the allegations set forth in the operative complaint in the present case were sufficient to establish that the plaintiff's speech was on the topic of racial discrimination against a fellow employee, which is a matter of public concern.

---

[12] In *Lane*, it was undisputed that the plaintiff's ordinary job responsibilities did not include testifying in court proceedings, and, therefore, the United States Supreme Court did not need to address whether truthful sworn testimony would constitute citizen speech under *Garcetti* when given as part of a public employee's ordinary job duties. See *Lane* v. *Franks*, supra, 573 U.S. 238 n.4.

Specifically, the plaintiff alleged in relevant part that Cruz complained to the plaintiff that his supervisor "was racially discriminating against him by declining to enter his overtime into the department's payroll system." The plaintiff alleged that he "immediately reported the complaint" to his supervisor and provided Cruz with advice regarding who to contact for further assistance. The plaintiff also alleged that, "[i]n September, 2017, [Cruz] filed an administrative complaint with the [CHRO] relating to his belief that he was the victim of unlawful racial discrimination," and the plaintiff "supported [Cruz'] filing of the complaint and attempted to protect him from further discrimination . . . ."

As to his testimony, the plaintiff alleged that, on October 23, 2018, "[*he*] *testified in a deposition for* [*Cruz'*] *CHRO complaint against the defendant. His testimony supported* [*Cruz'*] *allegations*," and, on December 20, 2019, he "completed a second deposition on behalf of [Cruz], testifying favorably for him and against the defendant." (Emphasis added.) In the relevant counts of the plaintiff's complaint, the plaintiff also specifically alleged that the defendant actively discouraged him from complying with his obligation "to report and prevent racial discrimination."

We conclude that these allegations, taken together, necessarily imply that the plaintiff's deposition testimony supported Cruz' discrimination claim. See *Doe* v. *Cochran*, supra, 332 Conn. 333 (considering facts "necessarily implied" from allegations); see also *Mercer* v. *Champion*, 139 Conn. App. 216, 232, 55 A.3d 772 (2012) (when taken together, facts necessarily implied from plaintiff's allegations were sufficient to satisfy statutory requirement). We emphasize that we must construe the allegations "broadly and realistically, rather than narrowly and technically"; (internal quotation marks omitted) *Sepega* v. *DeLaura*, supra, 326 Conn. 791; and that we must construe them in the manner

most favorable to sustaining the legal sufficiency of the complaint. See *A.C. Consulting, LLC* v. *Alexion Pharmaceuticals, Inc.*, supra, 194 Conn. App. 325.[13] In addition, in the context of our review of the plaintiff's § 31-51q claim under the state constitution, as set forth in count three of the operative complaint, we are also cognizant of "the state constitutional principle that speech on *all* subjects should be protected to the maximum extent possible . . . ." (Emphasis in original.) *Trusz* v. *UBS Realty Investors, LLC*, supra, 319 Conn. 210.

In reaching our conclusion, we are guided by the decision of the United States Court of Appeals for the Second Circuit in *Konits* v. *Valley Stream Central High School District*, 394 F.3d 121 (2d Cir. 2005), on which the plaintiff relies.[14] In *Konits*, the Second Circuit held that "any use of state authority to retaliate against those who speak out against discrimination suffered by others, including witnesses or potential witnesses in proceedings addressing discrimination claims, can give rise

[13] As noted previously, we also must take the facts alleged in the complaint as true, given that the issue was raised in the context of a motion to strike. See footnote 2 of this opinion. If the evidence ultimately produced by the plaintiff demonstrates that his deposition testimony did not support the discrimination claims made by Cruz, the defendant will have the opportunity to file a motion for summary judgment, which is often the procedural vehicle by which parties challenge whether speech is constitutionally protected in this context. See, e.g., *Lane* v. *Franks*, supra, 573 U.S. 234; *Garcetti* v. *Ceballos*, supra, 547 U.S. 415; *Konits* v. *Valley Stream Central High School District*, 394 F.3d 121, 124 (2d Cir. 2005).

[14] The plaintiff also relies on the decision of the Superior Court in *Thomas* v. *Guyette*, Docket No. CV-03-0081427-S, 2006 WL 2556506 (Conn. Super. August 11, 2006), vacated in part on other grounds, Docket No. CV-03-0081427-S, 2006 WL 3042074 (Conn. Super. October 13, 2006). *Thomas* is distinguishable from the present case insofar as the parties in *Thomas* did not dispute the content of the plaintiff's speech, and the court, considering a motion for summary judgment, had before it evidence of the plaintiff's specific statements. Id., *3–4. Nevertheless, the decision in *Thomas* supports the general proposition underlying the plaintiff's argument, that speech "directed at the ethnically discriminatory treatment of another employee" addresses a matter of public concern. Id., *4.

to a cause of action under . . . the [f]irst [a]mend-
ment." Id., 125. The plaintiff in that case, a public school
teacher, alleged that she suffered ongoing retaliation
as a result of her assistance to a fellow employee regard-
ing a gender discrimination claim. Id., 123–24. The plain-
tiff alleged that she provided assistance by, among other
things, being listed as a witness for the fellow employee
in her discrimination lawsuit against the school district.
Id., 123. The plaintiff alleged that she subsequently was
subjected to a series of adverse personnel actions by
the school district, its board of education, and certain
administrators and, therefore, filed her first retaliation
action (1996 lawsuit), which ultimately settled. Id. The
plaintiff filed a second retaliation action, the lawsuit at
issue in *Konits*, based on her claim that she was retali-
ated against for filing the 1996 lawsuit. Id., 124. The
United States District Court rendered summary judg-
ment in favor of the defendants after concluding that
the plaintiff's 1996 lawsuit was not speech on a matter
of public concern.[15] Id.

The Second Circuit vacated the judgment of the Dis-
trict Court and remanded the case for further proceed-
ings on the plaintiff's retaliation claim. Id., 126. The
Second Circuit explained that, "[b]ecause [the plain-
tiff's] 1996 lawsuit was predicated on speech about
gender discrimination against a fellow employee that
directly implicated the access of the courts to truthful
testimony," it disagreed with the District Court's assess-
ment that the lawsuit centered around the plaintiff's
dissatisfaction with the terms and conditions of her
employment. Id., 125–26. The Second Circuit opined
that the plaintiff's motive in speaking out had the
" 'broader public purpose' " of assisting the fellow

---

[15] The Second Circuit explained that, "if [the plaintiff's] 1996 lawsuit
addressed a matter of public concern, the public concern requirement would
be met for her current lawsuit as well." *Konits* v. *Valley Stream Central
High School District*, supra, 394 F.3d 124.

employee to redress her claim of gender discrimination; id., 126; and explained that "[g]ender discrimination in employment is without doubt a matter of public concern. . . . Indeed, we have held repeatedly that when a public employee's speech regards the existence of discrimination in the workplace, such speech is a matter of public concern. . . . [S]peech is of particular public concern when it involves actual or potential testimony in court or in administrative procedures. *Protection of the courts' interest in candid and truthful testimony, coupled with the rights of discrimination victims to seek protection in legal action, makes testimony or prospective testimony in discrimination suits a matter of particular public interest.*" (Citations omitted; emphasis added.) Id., 125. The court therefore determined that, if the plaintiff could prove that being identified as a witness in the fellow employee's lawsuit was a partial motivation for the retaliation she allegedly suffered, "then her [f]irst [a]mendment claim would certainly lie." Id.

In the present case, it may reasonably be inferred from the allegations set forth in the operative complaint that the plaintiff here, like the plaintiff in *Konits*, was "speak[ing] out against" discrimination in his testimony, or that his testimony "regard[ed] the existence of discrimination in the workplace . . . ." Id. Although the plaintiff failed to include allegations concerning the precise content of his testimony, or what he "actually said," as the defendant argues, the holding in *Konits* did not turn on the specifics of the plaintiff's proposed testimony. See id., 125–26. Instead, the general content of the plaintiff's proposed testimony in *Konits*—and its " 'broader public purpose' " of assisting a fellow employee to redress her claim of gender discrimination—was inferred from the plaintiff simply being identified as a witness in the discrimination action. See id.

The defendant argues that the plaintiff's reliance on *Konits* is misplaced given that it predated *Garcetti* and *Garcetti*'s requirement that public employees must be speaking "as citizens," rather than as employees in the course of performing their job duties, to be entitled to protection under the federal constitution. *Garcetti* v. *Ceballos*, supra, 547 U.S. 421. We are not persuaded.[16] Unlike the plaintiff in *Garcetti*, whose speech was made in the context of a memorandum that he had written because it was "part of what he . . . was employed to do," there is nothing to indicate that the plaintiff in *Konits*, a public school teacher, would have been "mak-[ing] statements pursuant to [her] official duties"; id., 421; by providing testimony in a fellow employee's discrimination action. See *Konits* v. *Valley Stream Central High School District*, supra, 394 F.3d 124–25. Thus, there is nothing to suggest that the holding in *Garcetti* would have affected the outcome of *Konits*. Indeed, even after the Supreme Court's decision in *Garcetti*, the Second Circuit has continued to cite *Konits* without indicating that *Garcetti* overruled that decision or otherwise affected its holding. See *Quinones* v. *Binghamton*, 997 F.3d 461, 467 n.3 (2d Cir. 2021) (citing *Konits* for proposition that "[t]here is law that any use of state authority to retaliate against those who speak out against discrimination suffered by others, including witnesses or potential witnesses in proceedings addressing discrimination claims, can give rise to a cause of action under [§ 1983] and the [f]irst [a]mendment" (internal quotation marks omitted)); see also *Colvin* v. *Keen*, 900 F.3d 63, 76 (2d Cir. 2018) (distinguishing *Konits* on basis that plaintiff was advising coworker of her constitutional rights, not speaking out against any perceived

---

[16] We also note that the defendant has failed to explain why the holding in *Konits* would not continue to provide helpful guidance in our consideration of the plaintiff's claim under the state constitution, regardless of the decision in *Garcetti*, given that our Supreme Court rejected the standard set forth in *Garcetti*. See *Trusz* v. *UBS Realty Investors, LLC*, supra, 319 Conn. 191, 210.

discrimination or official misconduct); *Kercado-Clymer* v. *Amsterdam*, 370 Fed. Appx. 238, 243 (2d Cir. 2010) (citing *Konits* in support of conclusion that plaintiff's conversation with city attorney about her own and others' complaints of sex discrimination was speech addressing matter of public concern). The federal district courts within the Second Circuit, including the United States District Court for the District of Connecticut, also have continued to rely on *Konits*. See, e.g., *Barone* v. *Judicial Branch Connecticut*, Docket No. 3:17-cv-00644 (VAB), 2018 WL 1368906, *9 (D. Conn. March 16, 2018); *Fairchild* v. *Quinnipiac University*, 16 F. Supp. 3d 89, 94 (D. Conn. 2014). Accordingly, we are not convinced that *Garcetti* overruled *Konits* or that it called into question the holding in *Konits*, and, therefore, we conclude that *Konits* remains good law and that it is persuasive in the present case.

Moreover, the court's observation in *Konits* that "speech is of particular public concern when it involves actual or potential testimony in court or in administrative procedures"; *Konits* v. *Valley Stream Central High School District*, supra, 394 F.3d 125; was subsequently confirmed by the United States Supreme Court in *Lane* v. *Franks*, supra, 573 U.S. 228. In *Lane*, the court held that "the [f]irst [a]mendment protects a public employee who provides truthful sworn testimony, compelled by subpoena, outside the scope of his ordinary job responsibilities." Id., 238. The court concluded that the testimony at issue in that case was speech on a matter of public concern because "[t]he content of [the plaintiff's] testimony—corruption in a public program and misuse of state funds—obviously involves a matter of significant public concern," and "the form and context of the speech—sworn testimony in a judicial proceeding—fortify that conclusion." Id., 241. Although *Lane* is not directly on point,[17] it lends support to our

---

[17] *Lane* did not involve testimony in support of a fellow employee's discrimination claim. Instead, the plaintiff's testimony in that case took place in

conclusion that the plaintiff's speech in the present case, given its form and context, involved a matter of public concern.

Accordingly, we conclude that the court improperly determined that the plaintiff failed to sufficiently allege that his speech addressed a matter of public concern. Therefore, we conclude that the court improperly granted the defendant's motion to strike the plaintiff's § 31-51q claims set forth in count two and count three of the operative complaint on this ground.

B

The plaintiff also argues that, contrary to the court's conclusion, he was not required to plead that his speech did not substantially or materially interfere with his job performance or the working relationship between him and his employer and that "[i]t makes far more sense for the burden to fall on the defendant to raise interference as a special defense." The defendant responds that the court properly concluded that the plaintiff must affirmatively plead noninterference, as an essential element of § 31-51q, and that the allegations in the opera-

the context of criminal trials and, as already noted, it concerned corruption in a public program and misuse of state funds, which the court concluded "obviously" involved a matter of public concern. *Lane* v. *Franks*, supra, 573 U.S. 241.

In addition, the plaintiff in *Lane* had been compelled by subpoena to testify. Id., 238. Despite this distinction, the plaintiff in the present case argues that his testimony was constitutionally protected even though he provided it voluntarily. Our research reveals that the plaintiff's argument has at least some support from certain federal courts of appeal, which have focused on the broader policy considerations of *Lane* rather than whether the speech at issue was compelled testimony. See *Bevill* v. *Fletcher*, 26 F.4th 270, 277 n.3 (5th Cir. 2022) ("[w]hether [the plaintiff] submitted [a sworn] statement voluntarily or under pain of punishment is not decisive, given that the policy rationale underlying *Lane* is to incentivize public employees to come forward with truthful information about corruption among public officials"); see also *Dougherty* v. *School District of Philadelphia*, 772 F.3d 979, 990 (3d Cir. 2014) (rejecting argument that holding of *Lane* was limited to context of compelled testimony).

tive complaint were insufficient to do so. We agree with the plaintiff.

As set forth previously in this opinion, § 31-51q provides that "[a]ny employer . . . who subjects any employee to discipline or discharge on account of the exercise by such employee of rights guaranteed by the first amendment to the United States Constitution or section 3, 4 or 14 of article first of the Constitution of the state, *provided such activity does not substantially or materially interfere with the employee's bona fide job performance or the working relationship between the employee and the employer*, shall be liable to such employee for damages caused by such discipline or discharge . . . ." (Emphasis added.) General Statutes (Rev. to 2019) § 31-51q.

The issue of whether a plaintiff making a § 31-51q claim must affirmatively plead noninterference is an open question that neither this court nor our Supreme Court has addressed. There is a split among the Superior Courts on this issue. Some courts have imposed upon the plaintiff the burden to plead and prove a lack of interference. See, e.g., *Coffy* v. *State*, Superior Court, judicial district of Fairfield, Docket No. CV-20-6094937-S (June 18, 2021) (71 Conn. L. Rptr. 109, 111); *Buscetto* v. *Saint Bernard School of Montville, Inc.*, Superior Court, judicial district of New London, Docket No. CV-11-6011089-S (February 22, 2013) (55 Conn. L. Rptr. 583, 587). Other courts have imposed upon the defendant the burden of raising any substantial and material interference as a special or affirmative defense. See, e.g., *D'Amato* v. *Board of Education*, Docket No. CV-19-6091032-S, 2020 WL 1656202, *12 (Conn. Super. March 3, 2020); *Matthews* v. *Dept. of Public Safety*, Superior Court, judicial district of Hartford, Docket No. CV-11-6019959-S (May 31, 2013) (56 Conn. L. Rptr. 262, 267–68). Several recent decisions from the United States District Court for the District of Connecticut also have

concluded that the burden is on the defendant to raise and prove the issue of interference. See *Mumma* v. *Pathway Vet Alliance, LLC*, 648 F. Supp. 3d 373, 391–92 (D. Conn. 2023); *Bacewicz* v. *Molecular Neuroimaging, LLC*, Docket No. 3:17-cv-85 (MPS), 2019 WL 4600227, *10–11 (D. Conn. September 23, 2019); *Blue* v. *New Haven*, Docket No. 3:16-cv-1411 (MPS), 2019 WL 399904, *9–10 (D. Conn. January 31, 2019).

The plaintiff contends that we should follow the approach of the Superior Court in *Matthews* v. *Dept. of Public Safety*, supra, 56 Conn. L. Rptr. 262. In *Matthews*, the court analyzed the language of § 31-51q and determined that the question of whether a plaintiff must plead a lack of substantial interference "revolves around the impact of the term 'provided' in the text of the [statute]." Id., 267. Applying principles of statutory construction, the court determined that the clause in § 31-51q regarding noninterference was a proviso, rather than an exception, and, therefore, the defendant bore the burden of raising the issue of interference as a special defense. Id., 267–68. Specifically, the court explained: "Clauses introduced by provided are fairly called a proviso or exception. Although they have sometimes been used interchangeably, there are some differences between a proviso and an exception. As a matter of form, the proviso is *usually part of a section establishing a general rule*, the proviso *being an added clause limiting the operation of the rule and being introduced by the word provided* or the words provided, however. . . . The operative effect of provisos and exceptions have sometimes been differentiated. For example, one who asserts a claim based upon a statute must [negate], in pleadings and proofs, any *exceptions* in the provision on which the claim is based, whereas [a] matter in a *proviso* can be left for the adversary as a defensive matter. . . . Provisos serve

the purpose of restricting the operative effect of statutory language to less than what its scope of operation would be otherwise. . . . Exceptions, like provisos, operate to restrict the general applicability of legislative language. Ordinarily a proviso occurs within the body of a section while an exception is drafted as a separate section. . . . [W]e have long held that provisos and exceptions to statutes are to be [strictly] construed with doubts resolved in favor of the general rule rather than the exception and that those who claim the benefit of an exception under a statute have the burden of proving that they come within the limited class for whose benefit it was established." (Citations omitted; emphasis altered; internal quotation marks omitted.) *Matthews* v. *Dept. of Public Safety*, supra, 267–68; see *Yale University* v. *New Haven*, 71 Conn. 316, 337, 42 A. 87 (1899) (stating that proviso is strictly construed and it must be established by its proponent).

The court in *Matthews* determined that imposing the burden on the defendant to raise the issue of interference was not only consistent with principles of statutory construction but also "comports with a logical operation of the statute and the Practice Book." Id., 268. The court further noted the practical difficulties a plaintiff would face if he were required to prove the lack of a substantial and material interference, as "he would be forced to prove a negative, which is a difficult if not impossible task." Id., citing *Arrowood Indemnity Co.* v. *King*, 304 Conn. 179, 203, 39 A.3d 712 (2012) ("the task of proving a negative is an inherently difficult one"). The court continued: "This would place the court in the peculiar position of requiring the plaintiff to plead either an extensive and exhaustive recitation of all events that may have involved interference or a boilerplate that would not give significant factual detail and would likely involve a legal conclusion. In contrast, by

placing the burden on the defendant to plead a substantial and material interference as a special defense, the defendant is able to allege specific facts concerning any incidents of disruption because, as the employer, it has a wider and better knowledge of disruptive events. This creates a situation well suited for an affirmative defense, and, in light of the case law, interpretation of the statutory text and confines of logic, it makes more sense that it is the defendant's burden to prove a substantial and material interference." (Footnote omitted.) *Matthews* v. *Dept. of Public Safety*, supra, 56 Conn. L. Rptr. 268.

The defendant contends that we should, instead, follow the analysis of the Superior Court in *Coffy* v. *State*, supra, 71 Conn. L. Rptr. 109. In *Coffy*, the court analogized § 31-51q to Connecticut's dog bite statute and pointed to our Supreme Court's analysis of the dog bite statute in *Goodwin* v. *Giovenelli*, 117 Conn. 103, 167 A. 87 (1933). At the time of the *Goodwin* decision, the dog bite statute imposed liability on the owner or keeper of any dog for damage by the dog to persons or property, "except where such damage shall have been occasioned to the body or property of a person who, at the time such damage was sustained, was committing a trespass or other tort."[18] General Statutes (1930 Rev.) § 3357; see *Goodwin* v. *Giovenelli*, supra, 105 n.1. As emphasized by the court in *Coffy*, the *Goodwin* decision held that the plaintiff bore the burden to plead and prove that he was not committing a trespass or other tort at the time of the dog attack, reasoning that, "[w]here an exception forms an integral part of that portion of a statute which creates a right, it becomes a limitation

---

[18] The current revision of the dog bite statute similarly imposes liability "except when such damage has been occasioned to the body or property of a person who, at the time such damage was sustained, was committing a trespass or other tort, or was teasing, tormenting or abusing such dog." General Statutes § 22-357 (b).

upon that right, and a plaintiff, to avail himself of the benefit of the statute, must show that he comes within the limited class for whose benefit the right was established, the burden of proof in this respect being upon him. . . . As the statute now reads, we hold that a complaint thereunder should, by proper allegations, negative the existence of circumstances which would bring the plaintiff within the exception . . . .” (Citations omitted.) *Goodwin* v. *Giovenelli*, supra, 107.

The court in *Coffy* determined that it “consider[ed] the statutory exception in the statute addressed in *Goodwin* to be functionally equivalent to the proviso in § 31-51q. Both statutes contain an enacting clause which creates a right of action for a plaintiff. In the factual scenario of the current case, the proviso within the enacting clause limits the scope of the right created by precluding the employee from suing when the employee’s conduct, although otherwise being protected under the statute, substantially or materially interferes with the employee’s job performance or the employee-employer working relationship. The proviso in § 31-51q forms an integral part of the statute and is a limitation on the right created by it. The only patent difference between the statutes, is that the statute in *Goodwin* uses the term ‘except’ to begin the ‘exception’ and § 31-51q uses the term ‘provided’ to begin the ‘proviso.’ In this case, that distinction has no impact because the function of both provisions, as just discussed, is the same. The function of the ‘exception’ in the dog-bite statute and the ‘proviso’ in § 31-51q is to place a limitation on the right created by each statute. Furthermore, no one would argue that if § 31-51q instead used the phrase, ‘except if such activity substantially or materially interferes with’ that its plain textual meaning would be any different.” *Coffy* v. *State*, supra, 71 Conn. L. Rptr. 110–11. Applying the reasoning set forth in *Goodwin*, the court in *Coffy* thus determined that the

plaintiff bore the burden of pleading and proving "the non-existence of the material interference element" of § 31-51q. Id., 111.

We adopt the well reasoned analysis set forth in *Matthews*, and we conclude that a plaintiff making a claim pursuant to § 31-51q does not have an affirmative burden to plead noninterference. Instead, a defendant may raise the issue of interference in a special defense. In reaching this conclusion, we find particularly persuasive the recent decision of the United States District Court for the District of Connecticut in *Mumma* v. *Pathway Vet Alliance, LLC*, supra, 648 F. Supp. 3d 373. In *Mumma*, the court examined the reasoning in both *Matthews* and *Coffy*. Id., 391–92. The court explained that, because the question of who bears the burden on the interference element of § 31-51q had not yet been decided by a Connecticut appellate court, its role was to try to predict how our Supreme Court would resolve the issue. Id., 391; see also *Travelers Ins. Co.* v. *633 Third Associates*, 14 F.3d 114, 119 (2d Cir. 1994) ("[w]here the substantive law of the forum state is uncertain or ambiguous, the job of the federal courts is carefully to predict how the highest court of the forum state would resolve the uncertainty or ambiguity"). The court then predicted that our Supreme Court would adopt the reasoning of *Matthews* and would not follow the decision in *Coffy. Mumma* v. *Pathway Vet Alliance, LLC*, supra, 391–92.

The court in *Mumma* found the *Coffy* decision unpersuasive because, although it contained a discussion of the proviso/exception distinction, it failed to contest the practical considerations identified in *Matthews*. Id., 391. The court in *Mumma* also observed that "dog bite plaintiffs and [§] 31-51q claimants are not similarly situated; whereas the former likely knows whether he was committing a tort at the time he was attacked, the latter almost invariably does not have the same knowledge of

disruptive events as the employer." (Internal quotation marks omitted.) Id., 392. We agree with this assessment. Accordingly, we conclude that the court in the present case improperly granted the defendant's motion to strike the plaintiff's § 31-51q claims set forth in counts two and three of the operative complaint on the ground that the plaintiff failed to sufficiently allege that his speech did not substantially or materially interfere with his job performance or the working relationship between him and his employer.

The judgment is reversed only with respect to the granting of the defendant's motion to strike counts two and three of the plaintiff's complaint and the case is remanded for further proceedings according to law; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.